946 A.2d 93

COMMONWEALTH of Pennsylvania, Appellant

v.

Jennifer Ann FEDOREK, Appellee.

Supreme Court of Pennsylvania.

Argued March 3, 2008.

Decided April 30, 2008.

476

James Paul Carbone, Venango County Dist. Attorney's Office, for the Com. of PA, appellant.

Jason Richard Lewis, Venango County Public Defender's Office, Christopher Erik Rutkowski, for Jennifer Ann Fedorek, appellee.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER and McCAFFERY, JJ.

## OPINION

Justice McCAFFERY.

In this appeal, we are asked to determine whether the Commonwealth must prove that an offender acted with intent to cause substantial "public" harm or serious "public" inconvenience in order to grade the offender's disorderly conduct conviction as a misdemeanor of the third degree pursuant to 18 Pa.C.S. § 5503(b). Because we determine that 18 Pa.C.S. § 5503(b) requires the Commonwealth to prove in a third-degree misdemeanor disorderly conduct prosecution that the offender acted with intent to cause substantial harm or serious inconvenience, rather than to prove substantial "public" harm or serious "public" inconvenience, and because the Commonwealth did prove in this case that Appellee, Jennifer Ann Fedorek, acted with intent to cause substantial harm, we reverse the Superior Court's reversal and reinstate the judgment of sentence.

On the evening of May 22, 2003, Dennis Scott Martin (the victim) was assaulted by Jack Schmader outside of a social club after Appellee, who is Schmader's sister or stepsister, urged Schmader to "hurt him" and "f—— him up." The victim, who was then the club's president, was dating Schmader's ex-wife at the time. On the evening in question, the victim was approached at the club by Schmader, Appellee, and Appellee's boyfriend, Eric Hutchinson. Schmader asked the victim to talk with him outside of the club, the victim agreed, and all four left the building together.

Once in the parking lot, Schmader began yelling at the victim about the victim's relationship with Schmader's ex-wife and children. Schmader repeatedly poked the victim in the

chest as he yelled, and the victim continued to back away as Schmader advanced. This went on for some time; indeed, Schmader backed the victim 25 to 30 feet along the front length of the club and then around the building's corner for another 10 to 15 feet toward its delivery entrance. The victim later testified that Appellee stood behind Schmader during this time yelling "Come on, Jack, hurt him. F—— him up. Hurt him."

The victim and Schmader continued to argue. When the victim interjected words questioning Schmader's ability as a parent, Schmader grabbed the victim about the shoulders and Hutchinson grabbed the victim around the neck. The victim began to have difficulty breathing and felt a sensation of panic. When the grip on his neck slackened, the victim yelled out for help. Eventually, the victim fell or was pushed to the ground, hit his head, and was kicked by one of his assailants in the left side. The victim then saw Appellee in the driver's seat of Schmader's Jeep. She had the driver's door open and yelled for Schmader and Hutchinson to "get in and get the hell out of here." Appellee, Schmader, and Hutchinson left the scene in that vehicle.

For her role in the incident, Appellee was charged with one count of simple assault graded as a second-degree misdemeanor,[1] one count of disorderly conduct graded as a third-degree misdemeanor,[2] and one count of summary harassment.[3] Hutchinson was similarly charged.[4]

Appellee and Hutchinson were tried together before a jury, and Appellee's motion for dismissal at the close of the Commonwealth's case was denied. After deliberation following trial, the jury certified that it was hopelessly deadlocked on the simple assault charges against both Appellee and Hutchinson, and the trial court declared a mistrial on those counts.

1. 18 Pa.C.S. § 2701.

2. 18 Pa.C.S. § 5503.

3. 18 Pa.C.S. § 2709.

4. Schmader pled guilty to simple assault, and all other charges against him were dismissed.

However, the jury found Appellee and Hutchinson guilty of disorderly conduct as a misdemeanor of the third degree. The trial court, reasoning that the summary harassment offenses merged with the disorderly conduct offenses, found Appellee and Hutchinson not guilty of the summary charges. Thereafter, the court denied Appellee's post-trial motion for judgment *n.o.v.*, seeking acquittal on the charge of disorderly conduct based on insufficient evidence; and Appellee was sentenced to intermediate punishment, fines, community service, and restitution for the victim's medical costs. Appellee filed a timely appeal to the Superior Court.

The offense of disorderly conduct is defined as follows:

### § 5503. Disorderly conduct

**(a) Offense defined.**—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise;

(3) uses obscene language, or makes an obscene gesture; or

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

**(b) Grading.**—An offense under this section is a misdemeanor of the third degree *if the intent of the actor is to cause substantial harm or serious inconvenience,* or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense.

**(c) Definition.**—As used in this section the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of busi-

ness or amusement, any neighborhood, or any premises which are open to the public.

18 Pa.C.S. § 5503 (emphasis added).

As can be deduced from Section 5503, disorderly conduct is a summary offense unless it is proven at trial that the offender intended to cause "substantial harm" or "serious inconvenience," in which case the crime is graded as a third-degree misdemeanor. Appellee renewed before the Superior Court the same argument she had raised before the trial court, to wit, that to sustain a third-degree misdemeanor conviction for disorderly conduct, the Commonwealth had to prove that Appellee intended to cause substantial "public" harm or serious "public" inconvenience, despite the absence of the word "public" in the grading paragraph of the statute.[5]

A divided *en banc* panel of the Superior Court agreed with Appellee's arguments, reversed the judgment of sentence, and remanded for resentencing. *Commonwealth v. Fedorek*, 913 A.2d 893 (Pa.Super.2006) (*en banc*). In arriving at its decision, the court majority, authored by President Judge Ford Elliott, focused on the fact that the indisputable intent of Section 5503 is to preserve "public" peace and prevent "public" disturbance. *See, e.g., Commonwealth v. Greene*, 410 Pa. 111, 117, 189 A.2d 141, 145 (1963) (holding that the crime of disorderly conduct "is intended to preserve the public peace"). Thus, the court held that although the word "public" is absent from Section 5503(b), the clear intent of the statute compelled the conclusion that a third-degree misdemeanor conviction for disorderly conduct must be based on evidence of the offender's intent to cause substantial "public" harm or serious "public" inconvenience.[6]

---

**5.** However, Appellee did concede that the Commonwealth proved the elements necessary for her conviction of disorderly conduct as a summary offense.

**6.** The Superior Court majority also found support for its conclusion after examining several additional factors. One factor was that Section 5503 is included in Article F of the Crimes Code, entitled "Offenses Against Public Order and Decency," which Article, the court noted, involves crimes protecting the public against antisocial acts that violate standards of public decency and order, such as public drunkenness.

Having determined that a third-degree misdemeanor conviction for disorderly conduct required proof of intent to cause substantial harm to the public or serious public inconvenience, the Superior Court majority determined that the record in the instant case failed to show evidence rising to this level of proof. The court stated:

Another factor was the majority's interpretation of commentary to Section 250.2 of the Model Penal Code, from which Section 5503 was adopted. *See* Official Comment—1972 to 18 Pa.C.S. § 5503 (stating that "[t]his section is derived from Section 250.2 of the Model Penal Code"). The court reasoned that because the Model Penal Code commentary emphasized that the crime of disorderly conduct is intended to penalize *public* nuisance, the more severe punishment provided for in 18 Pa.C.S. § 5503(b) was "clearly intended" to be imposed only for substantial *public* harm or serious *public* inconvenience. *Commonwealth v. Fedorek*, 913 A.2d 893, 898–99 (Pa.Super.2006) (*en banc*). Further, the court majority noted that two three-judge panel decisions of the Superior Court had previously held that third-degree misdemeanor disorderly conduct must be supported by proof that the offender had intended to cause substantial *public* harm or serious *public* inconvenience. In *Commonwealth v. Coon*, 695 A.2d 794 (Pa.Super.1997), the court reversed the defendant's conviction for third-degree misdemeanor disorderly conduct, holding that the Commonwealth was required but failed to prove that the defendant had intended to cause "substantial harm to the *public* or serious *public* inconvenience by his actions." *Id.* at 798 (emphasis in original). In *Coon*, the defendant was charged with misdemeanor disorderly conduct and summary harassment after discharging four rounds of live ammunition in the direction of his neighbor's rural home because the sound of target-practice gunfire emanating from his neighbor's property had disturbed the defendant's afternoon nap. The neighbor was hosting a birthday party for his son at the time of the incident. The Superior Court first determined that the Commonwealth had failed to establish the requisite *mens rea* for disorderly conduct because the neighbor's home did not constitute a public place. The court further stated that even if the area where the defendant had discharged his gun could be considered "public," the Commonwealth still had failed to prove the requisite *mens rea* for misdemeanor disorderly conduct because the defendant "denied any intent to cause serious public inconvenience or substantial harm to the public," and the circumstances indicated that the defendant's actions "were directed at [only] a lone individual." *Id.* at 798–99. In *Commonwealth v. Smith*, 811 A.2d 578 (Pa.Super.2002), the defendant twice punched a man in a bar for speaking derisively about him to a third party and then immediately left the bar. The Superior Court reversed the judgment of sentence for disorderly conduct as a misdemeanor of the third degree. Citing *Coon*, the court determined that the Commonwealth had failed to show that, during the brief altercation, the defendant specifically had intended to cause substantial harm to the public or cause serious public inconvenience. *Id.* at 579–80.

The Commonwealth did not demonstrate that [Appellee's] actions posed a wider threat or were intended to affect the other patrons of the bar. There is no indication her actions in the parking lot were intended to cause substantial harm or inconvenience to the general public. In this instance, there is simply no evidence that [Appellee's] ambitions in goading on the fight ranged any further than harm to the victim's person, for which she was charged separately with simple assault. At the most, her actions created a *risk* of public inconvenience, annoyance, or alarm, a summary offense. Thus, the evidence is insufficient to prove the requisite intent to sustain the conviction graded as a third[-]degree misdemeanor.

*Fedorek, supra* at 900(emphasis in original).

Judge Orie Melvin, joined by Judges Joyce, Bowes, and Gantman, dissented. The dissent concluded that the majority's holding ignored the plain, unambiguous language of the disorderly conduct statute because the majority had inserted the word "public" in Section 5503(b) when the General Assembly had not done so. Further, the dissent concluded that under basic principles of statutory construction, the majority's holding inappropriately conflated the definition of the offense of disorderly conduct with the language concerning the grading of the offense.[7] Moreover, the dissent determined that the evidence in the instant case was sufficient to support a conviction for third-degree misdemeanor disorderly conduct. The dissent concluded: "A jury could reasonably infer from [the] evidence, which is both direct and circumstantial, that [Appel-

7. As did the majority, the dissent found support for its conclusions in Section 250.2 of the Model Penal Code and its commentary, as well as from the placement of Section 5503 among other provisions of the Crimes Code. The dissent also acknowledged *Coon, supra,* and *Smith, supra,* but advocated that *Smith* be overruled and that *Coon* be disapproved of so far as it interpreted the "substantial harm" and "serious inconvenience" language of Section 5503(b) as meaning "substantial public harm" and "serious public inconvenience." The dissent further noted that its conclusion was supported by *Commonwealth v. Reynolds,* 835 A.2d 720 (Pa.Super.2003), where a Superior Court panel affirmed the third-degree misdemeanor disorderly conduct conviction of an individual based on that individual's threatening with a gun another person at a public place, *i.e.,* outside of a tavern.

lee] intended through her obnoxious goading to cause 'substantial harm' or 'serious inconvenience' within the meaning of 18 Pa.C.S.A. § 5503(b)." *Fedorek, supra* at 905 (Orie Melvin, J., dissenting).

We granted the Commonwealth's Petition for Allowance of Appeal as to the following two questions:

1. Whether a divided *en banc* panel of the Superior Court erred in interpreting the statutory definition of disorderly conduct, graded as a misdemeanor of the third degree, 18 Pa.C.S. § 5503(b), as requiring the Commonwealth to prove that the harm or inconvenience resulting from the conduct of the accused be a "substantial public harm" or a "substantial public inconvenience" despite the absence of this requirement in the plain language of the statute?

2. Whether a divided *en banc* panel of the Superior Court erred in reversing a judgment of sentence imposed on a disorderly conduct conviction by a jury where the Commonwealth introduced evidence at trial demonstrating that the defendant-Fedorek intended to cause substantial harm or serious inconvenience to the victim-Dennis Scott Martin?

"[W]hen the judiciary is required to resolve an issue concerning the elements of a criminal offense, its task is fundamentally one of statutory interpretation, and its overriding purpose must be to ascertain and effectuate the legislative intent underlying the statute." *Commonwealth v. Booth,* 564 Pa. 228, 233, 766 A.2d 843, 846 (2001); *see also* Section 1921(a) of the Statutory Construction Act of 1972(Act), 1 Pa.C.S. § 1921(a) (providing in relevant part: "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly."). Generally, the clearest indication of legislative intent is the plain language of the statute itself. *Commonwealth v. Davidson,* 595 Pa. 1, 32, 938 A.2d 198, 216 (2007). As we have stated:

To determine the meaning of a statute, a court must first determine whether the issue may be resolved by reference to the express language of the statute, which is to be read according to the plain meaning of the words. It is only

when the words of the statute are not explicit on the point at issue that resort to statutory construction is appropriate. However, basic principles of statutory construction demand that when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit, and legislative history may be considered only when the words of a statute are not explicit.

*Commonwealth v. Dellisanti*, 583 Pa. 106, 112, 876 A.2d 366, 369 (2005) (citing to Sections 1903 and 1921(b) and (c) of the Act, 1 Pa.C.S. §§ 1903, 1921(b) and (c)) (quotation marks and citation to case law omitted). Moreover, "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a).

Here, we determine that the express language of Section 5503(b) is clear as to the intent of the legislature with respect to the grading of the offense, and that the Superior Court majority below erred by disregarding or misinterpreting the express language of the statute.

First, there is no question in this case as to what constitutes the *elements* of the offense of disorderly conduct. "A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he" or she engages in certain enumerated activity. 18 Pa.C.S. § 5503(a). Relevant to the instant case, one such activity is "engag[ing] in fighting or threatening, or in violent or tumultuous behavior." 18 Pa.C.S. § 5503(a)(1). Indeed, Appellee concedes that the Commonwealth established the necessary elements to support her conviction for disorderly conduct as defined by subsection (a) of the statute.

Subsection (b) of the statute addresses the issue of how the offense, once established, is to be graded for purposes of sentencing. This subsection states in relevant part: "An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience," otherwise, it "is a summary offense." 18 Pa.C.S. § 5503(b). Conspicuously absent from this language is an expression that the actor must intend to cause

substantial *public* harm or serious *public* inconvenience in order for the crime to be graded as a third-degree misdemeanor. The General Assembly plainly omitted the modifier "public" in subsection (b) while it plainly included that modifier in subsection (a). The language of Section 5503(b) plainly and explicitly does not require that the Commonwealth prove that the actor must intend to cause substantial *public* harm or serious *public* inconvenience in order for the crime to be graded as a third-degree misdemeanor, and the Superior Court clearly erred by so holding. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b); *see also Kusza v. Maximonis*, 363 Pa. 479, 482, 70 A.2d 329, 331 (1950) (determining that a court "cannot, under its powers of construction, supply omissions in a statute, *especially where it appears that the matter may have been intentionally omitted*" (emphasis added)).

■ However, we also observe: "In the construction of the statutes of this Commonwealth, the rules set forth in [the Act, including 1 Pa.C.S. § 1921(b), which we applied in the preceding paragraph] shall be observed, *unless* the application of such rules would result in a construction inconsistent with the *manifest intent* of the General Assembly." 1 Pa.C.S. § 1901; emphasis added.[8] As we previously stated, the first rule of statutory construction is to determine whether the issue may be resolved by reference to the express language of the statute, which is to be read according to the plain meaning of the words. 1 Pa.C.S. §§ 1903 and 1921(b); *Dellisanti, supra* at 112, 876 A.2d at 369. We abandon these rules only when their application is inconsistent with the manifest intent of the General Assembly. Such is not the case here.

8. Although the Superior Court majority did not *expressly* base its decision on the language enunciated in 1 Pa.C.S. § 1901, clearly implicit in the court's decision is its determination that the *intent* of Section 5503 requires that a third-degree misdemeanor disorderly conduct conviction must be based on evidence that the offender acted with intent to cause substantial "public" harm or serious "public" inconvenience.

██ Certainly, Section 5503 is aimed at protecting the *public* from certain enumerated acts. "Under the statute, whether a defendant's words or acts rise to the level of disorderly conduct hinges upon whether they cause or unjustifiably risk a *public* disturbance. The cardinal feature of the crime of disorderly conduct is *public unruliness* which can or does lead to tumult and disorder." *Commonwealth v. Hock,* 556 Pa. 409, 415–16, 728 A.2d 943, 946 (1999) (quotation marks and citation omitted; emphasis added). Thus, the impulse of the Superior Court majority in this case to brush the grading paragraph of Section 5503 with the gloss of the explicit intent of the statute to preserve public order is understandable.

██ However, the manifest intent of Section 5503 is neither transgressed nor violated by adherence to Section 5503(b)'s clear omission of the word "public" as modifying "substantial harm or serious inconvenience." Although Section 5503 as a whole is aimed at preventing public disturbance, it accomplishes this aim by focusing upon certain *individual* acts, which, if pursued with the intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, constitute the offense of disorderly conduct. These individual acts focus upon the offender's *behavior.* One such act, pertinent to the instant case is "engag[ing] in fighting or threatening, or in violent or tumultuous behavior." 18 Pa.C.S. § 5503(a)(1). Significant is the fact that the General Assembly did not require that this prohibited act be directed at a certain number of persons that could qualify as "the public." Therefore, when an offender engages in fighting or threatening, or in violent or tumultuous behavior in a public arena, even when that conduct is directed at only *one other person,* the offender may be subject to conviction for disorderly conduct. *Hock, supra* at 420, 728 A.2d at 948 (Castille, J, dissenting). Indeed, there are numerous appellate decisions of this Commonwealth determining evidence to be sufficient to sustain convictions for disorderly conduct where the underlying public acts involve, as in the instant case, the private melodramas of two or three people that also cause or create the risk of public disturbance. *See Commonwealth v. Mas-*

*trangelo,* 489 Pa. 254, 262, 414 A.2d 54, 58 (1980) (holding that the evidence was sufficient to support the defendant's misdemeanor conviction for disorderly conduct when he shouted "fighting words" at a meter maid on a public street); *See also Commonwealth v. O'Brien,* 939 A.2d 912, 913 (Pa.Super.2007) (holding that the evidence supported the defendant's conviction for disorderly conduct when he confronted a motorist stopped along a roadway; used profane language against the motorist; and then reached into the motorist's car, took his gloves resting on the dashboard, and slapped the motorist with them);[9] *Commonwealth v. Reynolds,* 835 A.2d 720, 730–31 (Pa.Super.2003) (holding that the evidence supported the defendant's conviction for disorderly conduct when in a bar, he threatened to kill another individual with his gun and outside of the bar, actually pointed his gun at this individual); and *Commonwealth v. Lutes,* 793 A.2d 949, 961–63 (Pa.Super.2002) (holding that the evidence supported the defendants' conviction for disorderly conduct when they confronted, verbally assaulted and threatened, and physically touched one person in a public arena, the county courthouse); *see also Commonwealth v. Young,* 370 Pa.Super. 42, 535 A.2d 1141, 1143 (1988) (observing that the courts of this Commonwealth "have held that one who exhibits disorderly behavior in a public place is guilty of disorderly conduct even if that behavior is directed at a single individual").

 In similar fashion, Section 5503(b), addressing the grading of the offense, focuses upon the offender's *behavior,* not directly upon the public impact of that behavior.[10] Thus,

9. However, the issue in this case was whether the roadway to and from a private community was a public place for purposes of Section 5503. The Superior Court determined that it was.

10. However, the degree of egregiousness of the offender's behavior necessarily has an impact on the peace and safety of the public. Depending on the time, place, or other circumstances, if an offender has, for example, a violent encounter with another in a public arena but does not intend substantial harm and none is evident, the public peace and safety is threatened less than if the offender had carried out the encounter with violence amounting to substantial harm. The more egregious the degree of behavior proscribed by Section 5503(a), the greater the potential public inconvenience, annoyance, or alarm.

when the Commonwealth proves that an offender intended to cause public inconvenience, annoyance or alarm, or recklessly created a risk thereof, by, for example, engaging in fighting or threatening, or in violent or tumultuous behavior, the next level of inquiry, under Section 5503(b), is the degree of the offender's *behavior*. If the offender acted with intent to cause substantial harm or serious inconvenience (and by so doing potentially increased the threat to the public peace and safety), the offense is graded as a third-degree misdemeanor. Thus, a plain and direct reading of the express words of Section 5503(b) furthers rather than transgresses upon the manifest intent of the statute as a whole.[11]

[13] Therefore, we hold that Section 5503(b) does not require that the Commonwealth prove that an offender acted with intent to cause substantial *public* harm or serious *public* inconvenience, but only that the offender acted with intent to cause substantial harm or serious inconvenience, in order to sustain a conviction for disorderly conduct as a misdemeanor of the third degree.[12]

**11.** Notably, the Superior Court majority's interpretation of Section 5503(b) does not fit well with the manifest intent of the statute as a whole. The court determined that a third-degree misdemeanor conviction had to be supported by evidence of substantial *public* harm or serious *public* inconvenience. Under this reading of the statute, a pugilist expressing with his fists his displeasure upon another individual in a public place could be convicted of disorderly conduct as a misdemeanor of the third-degree only if the Commonwealth could prove, *not* necessarily that he or she intended substantial harm to the victim but, that he or she actually intended that the *public* be substantially harmed by his or her behavior. Thus, the Superior Court's interpretation would appear to require that the Commonwealth prove that the offender, while landing blows upon another, intended that the blows were meant to substantially harm the public, with the victim simply being an object for the expression of the offender's harmful intent against the public at large, despite the fact that the substantial violence being perpetrated poses a great risk to public peace and safety. The General Assembly could not possibly have intended such an interpretation of Section 5503.

**12.** We also note that although the Superior Court dissent may be correct in its determination that the Model Penal Code and the placement of Section 5503 among other public nuisance statutes in the Crimes Code supports the conclusion that the language of Section 5503(b) is to read without the insertion of the word "public," we need not explore such analysis because of our conclusion that the plain and

490

Having arrived at our interpretation of Section 5503(b), we apply that interpretation to the facts of the instant case. The evidence in support of Appellee's conviction for disorderly conduct is that Appellee observed her brother in a verbal confrontation with the victim concerning a domestic dispute, placed herself in close proximity to the action, and exhorted her brother to "hurt" and "f—— up" the victim. Immediately thereafter, the brother and Appellee's boyfriend assaulted the victim. Clearly, Appellee intended "harm" by her actions: she forthrightly encouraged one person to "hurt" another. Just as clearly, Appellee intended that this harm be "substantial." "F—— up" has relevantly been defined as "to ruin or spoil." *Merriam Webster's Collegiate Dictionary* 470 (10th ed. 1996). In the context of Appellee's use of the phrase and under the circumstances of the roiling confrontation between Appellee's brother and the victim, one may certainly conclude that the harm Appellee intended against the victim in the public arena was "substantial." Indeed, it is difficult to envision an opposite conclusion. Therefore, we hold that the evidence fully supported the jury's finding of guilt on the charge of disorderly conduct as a misdemeanor of the third degree. Accordingly, we reverse the order of the Superior Court and reinstate the judgment of sentence.

Justice TODD did not participate in the consideration or decision of this case.

Chief Justice CASTILLE and Justices SAYLOR, EAKIN and BAER join the opinion.

express language of the statute provides sufficient basis supporting our holding. *See Dellisanti, supra* at 112, 876 A.2d at 369.