J-A23041-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                              :           PENNSYLVANIA
                              :
            v.                :
                              :
                              :
JOSEPH NICHOL                 :
                              :
            Appellant         :  No. 544 EDA 2020

Appeal from the Judgment of Sentence Entered November 25, 2019
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-CR-0000623-2019

BEFORE:  KUNSELMAN, J., NICHOLS, J., and PELLEGRINI, J.*

MEMORANDUM BY PELLEGRINI, J.:            **FILED OCTOBER 28, 2020**

Joseph Nichol (Nichol) appeals from the judgment of sentence imposed

in the Court of Common Pleas of Lehigh County (trial court) after his jury

conviction for Disorderly Conduct, 18 Pa.C.S. § 5503(a)(1). Nichol challenges

the sufficiency of the evidence to support the grading of his conviction as a

third-degree misdemeanor. After careful review, we affirm.

**I.**

We take the following factual background and procedural history from

the trial court's March 18, 2020 opinion and our independent review of the

certified record. The trial court aptly set forth the relevant facts, as follows:

On February 4, 2019, the Allentown Police were dispatched to the
Turkey Hill Gas Station at 724 North 15th St. in Allentown,
Pennsylvania in Lehigh County, because of a report of a male with

_____

* Retired Senior Judge assigned to the Superior Court.

a firearm, later identified as [Nichol], who was causing a disturbance. Multiple witnesses observed [Nichol] arguing with the occupants of an Acura while parked at the gas pump. These witnesses included William Frick, Jennifer Edwin (formerly Jennifer Stephan), Kwayne Johnson, and Richard McKinney[.]

(Trial Court Opinion, 3/18/20, at 1-2) (pagination provided).

On March 7, 2019, the Commonwealth filed an information that, in pertinent part,[1] charged Nichol with Disorderly Conduct as a misdemeanor of the third degree. It alleged that Nichol, with the intent to cause substantial harm or serious inconvenience, "did point a loaded firearm at William Frick, Jennifer [Edwin], and Kwayne Johnson." (Information, 3/07/19, at 1) (some capitalization omitted). Nichol's two-day trial commenced on October 21, 2019. The Commonwealth's witnesses all testified to the same basic facts. Mr. Frick testified that he observed Nichol yelling at a woman in the Turkey Hill parking lot. When Mr. Frick drove closer to ensure the woman's safety, he saw that Nichol was waving a gun, which he then pointed at Mr. Frick. (**See** N.T. Trial, 10/21/19, at 32-34, 40). Mr. Frick immediately called the police. (**See id.** at 36-37). He did not observe anyone with a weapon other than Nichol. (**See id.** at 42).

Ms. Edwin testified that when she exited the Turkey Hill market, she observed Nichol waving a gun and walking toward a woman and a man. (**See**

_____

[1] The information also included three counts each of Terroristic Threats with Intent to Terrorize Another, 18 Pa.C.S. § 2706(a)(1), and Simple Assault, 18 Pa.C.S. § 2701(a)(3).

- 2 -

*id.* at 55). Ms. Edwin yelled at the two people to leave. (*See id.* at 57). As the two individuals got into their car, Nichol continued to walk toward them brandishing the gun in his hand. (*See id.* at 56-57). When the couple left in their vehicle, Nichol walked around the parking lot at the front of the station where Ms. Edwin and others were standing, waving the gun and telling Ms. Edwin to "mind your fucking business." (*Id.* at 58).

Mr. Johnson testified that as he was pulling into the Turkey Hill parking lot, he saw Nichol with a gun arguing with a female, calling her a bitch and threatening a man who was getting in her car that he would shoot him too. (*See id.* at 84). He said there was a group of people standing outside and Nichol was walking around, waving his gun and yelling at them to mind their own business. (*See id.* at 85-86).

Mr. McKinney testified that after he left the Turkey Hill market, he intended to get gas but stayed by the door of the store instead because he observed a "guy outside with a gun." (N.T. Trial, 10/22/19, at 12). He also stated that after Nichol's initial argument at the gas pumps, he went over to where a crowd had formed at the door, waving his gun and asking if anyone had a problem. (*See id.* at 13).

The Commonwealth also presented the testimony of the responding Allentown Police Department Officers, John Leonard and Brian Guzley.[2] Officer Leonard testified as the Affiant and first officer on the scene. As he pulled into the parking lot, he observed a group of six to seven people in the same vicinity as Nichol, waiting to talk to the officer. (*See* N.T. Trial, 10/21/19, at 118). They were pointing toward Nichol, whom Officer Leonard observed with an unsecured gun tucked under his arm. (*See id.* at 119). He testified that it was not in a holster, and that the holster utilized by Nichol was a belt, not an over-the-shoulder style. (*See id.*). When Officer Leonard seized the gun from Nichol, it was loaded. (*See id.* at 124). Nichol's actions at the Turkey Hill disrupted the flow of business, causing cars to leave the area and a line to back up at the door. (*See id.* at 125).

Nichol testified in his own defense that he had his gun in a holster under his left arm when he stepped out to pump gas at the Turkey Hill. (*See* N.T. Trial, 10/22/19, at 33-34). He stated that as he was doing so, a man ran through the gas pumps yelling obscenities and a woman was yelling for the individual to get back in the car. (*See id.* at 36-37, 39, 41). After the couple

---

[2] Because Officer Guzley was the second officer to respond to the Turkey Hill, the scene was secured by the time he arrived. He processed the gun to ensure that it was not stolen and authenticated a photograph of it at trial. (*See* N.T. Trial, 10/21/19, at 106-09). He also stated that when on routine patrol, he had seen Nichol weaving in and out of traffic approximately ten minutes prior to the Turkey Hill incident. (*See id.* at 109-10).

walked away, the man returned and Nichol pulled out his gun. (*See id.* at 40). He said that Mr. Frick then pulled up in his truck, said he was going to call the police, and Nichol waved the gun holster at him. (*See id.* at 42-43). After the couple drove off, Nichol holstered the gun. (*See id.* at 48). He stated that he then walked toward the store and never removed the gun from the holster. (*See id.* at 50). He denied yelling, threatening or waving his gun at anybody. (*See id.* at 51-52).

At the conclusion of trial, the jury convicted Nichol of Disorderly Conduct as a third-degree misdemeanor and acquitted him on the remaining charges. The trial court denied his post-sentence motion raising the issues of the sufficiency and weight of the evidence. On February 5, 2020, Nichol timely appealed. Both he and the trial court complied with Rule 1925. *See* Pa.R.A.P. 1925.

## II.

Nichol challenges the sufficiency of the evidence to support his Disorderly Conduct conviction.[3] He specifically posits that the Commonwealth

---

[3] Our standard of review of this matter is well-settled:

> The standard we apply ... is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the

failed to establish the requisite *mens rea* for Disorderly Conduct as a third degree misdemeanor because he brandished the gun to defend himself from what he thought was potential harm based on the original couple's actions and the verbal confrontation, not with the intent to cause inconvenience, annoyance or alarm, and that, even if he did, he did not intend to cause substantial harm or serious inconvenience. (**See** Nichol's Brief, at 9, 13-14). He also argues the fact that he remained at the scene once the police had been called and was cooperative upon their arrival, supporting his position that he lacked the requisite intent. (**Id.** at 14).

**A.**

Section 5503(a)(1) of the Crimes Code provides that "[a] person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . engages in

---

Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Edwards**, 229 A.3d 298, 306 (Pa. Super. 2020) (citation omitted).

fighting or threatening, or in violent or tumultuous behavior[.]" 18 Pa.C.S. § 5503(a)(1). "'Fighting words' will support a conviction for disorderly conduct." *Commonwealth v. Reynolds*, 835 A.2d 720, 731 (Pa. Super. 2003) (citation omitted). "If the offender acted with intent to cause substantial harm or serious inconvenience (and by so doing potentially increased the threat to the public peace and safety), the offense is graded as a third-degree misdemeanor." *Commonwealth v. Fedorek*, 946 A.2d 93, 101 (Pa. 2008); *see* 18 Pa.C.S. § 5503(b).

> The *mens rea* requirement of Section 5503 demands proof that appellant by [his] actions intentionally or recklessly created a risk [of causing] or caused a public inconvenience, annoyance or alarm.[4] The specific intent requirement of this statute may be met by a showing of a reckless disregard of the risk of public inconvenience, annoyance, or alarm, even if the appellant's intent was to send a message to a certain individual, rather than to cause public inconvenience, annoyance, or alarm.

*Commonwealth v. Maerz*, 879 A.2d 1267, 1269 (Pa. Super. 2005) (citations and quotation marks omitted). The Commonwealth can prove intent by direct

---

[4] 18 Pa.C.S. § 302(b)(1) provides that a "person acts intentionally with respect to a material element of an offense when if the element involves the nature of his conduct or a result [of his conduct], it is his conscious object to engage in conduct of that nature or to cause such a result." For a person to act recklessly, 18 Pa.C.S.§ 302(b)(3),provides that "a person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

or circumstantial evidence. *See Commonwealth v. Coon*, 695 A.2d 794, 798 (Pa. Super. 1997) (citation omitted).

Regarding self-defense, we observe:

> The use of force against a person is justified when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person. *See* 18 Pa.C.S. § 505(a). When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt. …

*Reynolds*, *supra* at 731 (case citation omitted).

**B.**

Here, the criminal information maintained in pertinent part that Nichol, with the intent to cause substantial harm or serious inconvenience, "did point a loaded firearm at William Frick, Jennifer [Edwin], and Kwayne Johnson[,]" not for his actions involving the parties to the original altercation. (Information, 3/07/19, at 1) (some capitalization omitted).

At trial, Nichol painted a picture of aggression by the two individuals with whom he had originally gotten into a verbal altercation. The Commonwealth introduced the testimony of four eyewitnesses to the original verbal altercation who testified that Nichol waved his gun at them and aggressively warned in intimidating, expletive-laced language that they should mind their own business, both before and after the participants in the original argument had left the scene.

Viewing this evidence in the light most favorable to the Commonwealth as verdict winner, we conclude that this eyewitness testimony was sufficient

for the Commonwealth to prove beyond a reasonable doubt that Nichol "engaged in violent or tumultuous behavior" intended to create public alarm and a serious inconvenience, not to "protect[] himself against the use of unlawful force." *Maerz*, *supra* at 1269; *see also Edwards*, *supra* at 306; *see also Fedorek*, *supra* at 101; *Reynolds*, *supra* at 731; *Coon*, *supra* at 798.[5]  Nichol's issue lacks merit.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 10/28/2020*

_____

[5] Nichol's argument that the Commonwealth failed to establish Disorderly Conduct because he remained at the scene when the police were called and he was compliant with them upon their arrival, is unavailing and goes to weight, not sufficiency.  As noted previously, the jury, "while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence."  *Edwards*, *supra* at 306 (citation omitted).