**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ENOCH L. BENITEZ | : | |
| | : | |
| Appellant | : | No. 2019 EDA 2024 |

Appeal from the Judgment of Sentence Entered February 7, 2024
In the Court of Common Pleas of Monroe County
Criminal Division at No: CP-45-CR-0002633-2018

BEFORE:  STABILE, J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY STABILE, J.:                **FILED OCTOBER 30, 2025**

Appellant, Enoch L. Benitez, appeals from the judgment of sentence imposed by the Court of Common Pleas of Monroe County on February 7, 2024, following a jury trial.  Appellant challenges the sufficiency of the evidence to support his convictions of indecent assault and disorderly conduct, as well as the denial of a new trial based upon prosecutorial misconduct.  Upon review, we affirm.

The trial court summarized the facts as follows:

On July 29, 2018, [] two sisters were in a wave pool at a local resort that was open to the public.  Others were in the pool as well.  In separate incidents in different parts of the pool, each sister was inappropriately grabbed by [Appellant], whom neither knew.

The first sister stated that she was in the shallow end, separated from her group because she could not swim well.  At some point, she noticed [Appellant] was lingering around her for an extended period of time.  [She described Appellant hoovering near her

family for about ten minutes, even moving with their group to a different area of the pool.] The wave pool was not crowded, so she thought his proximity to her was unusual because typically people are often moved around by the waves. She felt like she had to keep an eye on [Appellant] while also trying to enjoy her time in the wave pool. Eventually, she was hit by a wave when a "very rough and aggressive hand" cupped her inner buttock and upper thigh. She testified that the cup on her buttocks was a painful and firm grab that lingered for two seconds. Immediately afterwards, she turned around to find [Appellant] standing there apologizing that it was an accident.

The second sister testified that, while apart from her group in the deep end, a wave hit her, and she was moved by the water. She, too, felt a "vicious and aggressive" grab between her inner buttocks. She described the grab as a painful squeezing – "trying to get a handful" – that lasted for two to three seconds. She screamed out of shock and turned around to find [Appellant] behind her immediately apologizing and stating that it was an accident. Visibly upset, she went to tell her family, including her sister, what happened. When she recounted the incident, her sister stated that a man had inappropriately grabbed her buttocks about five minutes earlier.

At this point, the sisters reported the physical interactions to a lifeguard, who then wrote down a description of the man and gave it to security. [The sisters also pointed Appellant out to the lifeguards.] Based on the description, security removed [Appellant] from the wave pool and questioned him regarding the incidents. The police arrived to question the girls, and later [Appellant]. In their statements to the police, each sister reported that she had been aggressively grabbed on the buttocks and inner thigh without her consent. Afterwards, they immediately left the resort without finishing the birthday celebration with their family due to feeling angry, unsettled, and uncomfortable.

Trial Court Opinion, 10/10/24, at 8-9 (citations to record omitted).

Appellant was charged with two counts each of indecent assault and disorderly conduct. After failing to appear in court on July 8, 2019, a bench warrant was issued for Appellant's arrest. The bench warrant was resolved

on May 19, 2023. Following a jury trial on October 6, 2023, Appellant was found guilty on all counts. Sentencing was deferred for a pre-sentence investigation and assessment by the Sexual Offenders Assessment Board ("SOAB"). On February 7, 2024, Appellant was sentenced to an aggregate two to four years' incarceration and was classified as a Tier 1 sexual offender. Appellant filed a post-sentence motion, which was denied by the trial court. This appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises three issues for our review:

1. Whether the trial court abused its discretion by not setting aside the verdict where there was insufficient evidence to convict the Appellant of indecent assault [] where the parties were in a wave pool and there was no evidence any contact was done for the purpose of arousing sexual desire?

2. Whether the trial court abused its discretion by not setting aside the verdict where there was insufficient evidence to convict Appellant of disorderly conduct where the parties were in a wave pool and there was no evidence that any contact that occurred was done with the intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, created a physically hazardous or physically offense condition by an act which served no legitimate purpose of the actor, and the intent of the Appellant was to cause substantial harm or serious inconvenience, or that the Appellant persisted in disorderly conduct after reasonable warning or request to desist?

3. Whether the trial court abused its discretion by not setting aside the verdict and granting a new trial after allowing the Assistant District Attorney to repeatedly ask the Appellant if witnesses were lying when that is for the

fact finder to determine and prosecutorial misconduct for the Assistant District Attorney to ask?

Appellant's Brief, at 7-8 (unnecessary capitalization omitted).

For a challenge to the sufficiency of the evidence, our standard of review is:

> whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. Smith*, 206 A.3d 551, 557 (Pa. Super. 2019) (citation omitted).

On appeal, Appellant challenges the sufficiency of the evidence to prove that the contact with the victims was for the purpose of arousing or gratifying sexual desire. *See* Appellant's Brief, at 22. He claims that any contact was purely accidental because they were in an overcrowded wave pool. *Id.* at 27. Appellant argues that the trial court failed to consider the context in which the contact occurred when it found that it was done for the purpose of arousing or gratifying sexual desire. *Id.* at 26-27.

- 4 -

Appellant was convicted under subsection (a)(1) of the indecent assault statute, which provides:

> (a) Offense defined. — A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person . . . for the purpose of arousing sexual desire in the person or the complainant and:
>
> (1) the person does so without the complainant's consent[.]

18 Pa.C.S.A. § 3126(a)(1). Indecent contact is defined as: "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S. § 3101 (definitions). We have explained:

> The separate crime of indecent assault was established because of a concern for the outrage, disgust, and shame engendered in the victim rather than because of physical injury to the victim. Due to the nature of the offenses sought to be proscribed by the indecent assault statute, and the range of conduct proscribed, the statutory language does not and could not specify each prohibited act.

***Commonwealth v. Gilliam***, 249 A.3d 257, 267 (Pa. Super. 2021). In other words, a person commits the crime of indecent assault when they have indecent contact with another for the purpose of arousing or gratifying sexual desire.

In determining whether contact was for the purpose of arousing or gratifying sexual desire, our Supreme Court has explained:

> [W]hether a part of the body was kissed, stroked, slapped, or poked does not inform whether the body part is intimate, but does speak to whether the touching was for sexual gratification. An

example sharpens the point: if someone were to flick a bee off of a woman's breast, he would have touched what is reasonably considered to be an intimate part of her body, but the manner and purpose – a flicking done to prevent the person from being stung – goes to whether the touching was for sexual gratification.

***Commonwealth v. Gamby***, 283 A.3d 298, 315 (Pa. 2022). "Intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances." ***Commonwealth v. Griffith***, 305 A.3d 573, 577 (Pa. Super. 2023). Moreover, indecent contact may occur outside the context of a sexual or intimate situation. ***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa. Super. 2006) (wrapping one's arms around another person and inserting one's tongue into another's mouth clearly involves the touching of an intimate part of that person even though done outside of the context of a sexual or intimate situation).

Here, two sisters testified, in separate incidents, that Appellant forcefully grabbed their inner buttocks which lasted two to three seconds. One sister, L.M., noticed Appellant hovering near her family for about ten minutes before the first incident. She felt it was unusual for Appellant to be so close to her group because the wave pool was not that crowded. Shortly thereafter, a wave hit L.M. and she simultaneously felt someone crash into her and grab her inner buttock in a very rough and aggressive manner. She explained that it was painful, firm and lingered for two to three seconds. When L.M. turned around, Appellant was there and immediately apologized.

- 6 -

Approximately five minutes later, unbeknownst to what happened to her sister, F.M. was swimming in the deep end of the wave pool, somewhat separated from her family. She, too, was aware that Appellant had been near her family. She explained that Appellant "was always around. Whenever I would turn around, he was there." N.T. Trial, 10/6/23, at 49-50. F.M. was overtaken by a wave when she felt someone viciously and aggressively grab her inner buttocks. She described it as "something like squeezing and intentionally trying to get a handful of a grab." *Id.* at 51. It lasted two to three seconds. F.M. screamed in shock and turned to find Appellant, who immediately apologized and said it was an accident.

Based on the totality of the circumstances, the jury was free to conclude that the grabbing and squeezing of the inner buttocks of each of the victims constituted the touching of an intimate part of a person and that the grabbing was done for the purpose of arousing Appellant's sexual desire. Appellant forcefully grabbed the inner buttocks and squeezed for two to three seconds on each victim. It cannot be disputed that the buttocks area is an intimate part of a person's body. The jury most certainly could conclude that identical acts committed on two victims in close proximity in time in the same wave pool and under the same circumstances were more than mere coincidence. This is especially so where the jury could find the acts were done intentionally and in a similar manner, thereby refuting Appellant's explanation that the acts

of groping were an accident. Thus, we conclude there was sufficient evidence to support Appellant's convictions of indecent assault.

Appellant also argues that the evidence was insufficient to support his disorderly conduct convictions. Specifically, he claims a lack of evidence to prove (1) intent to cause public inconvenience as an element of the offense and (2) intent to cause substantial harm or serious inconvenience to increase the grading of the offense. *See* Appellant's Brief, at 32.

Appellant was convicted under subsection (a)(4) of disorderly conduct, charged as a misdemeanor of the third degree, which states:

> (a) **Offense defined**. — A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> * * * *
>
> (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.
>
> (b) **Grading**. --An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense.

18 Pa.C.S.A. § 5503. We have explained:

> It is well-settled that the offense of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people and it is not to be used as a dragnet for all the irritations which breed in the ferment of a community. Rather, the specific and definite purpose of the disorderly conduct statute is to preserve the public peace.

***Commonwealth v. Bertothy***, 307 A.3d 776, 781 (Pa. Super. 2023) (citations and quotation marks omitted).

Here, Appellant argues that there was no evidence to prove an intent to cause public inconvenience because the only members of the "public" who were inconvenienced, annoyed or alarmed were L.M. and F.M. ***See*** Appellant's Brief, at 36. Thus, he contends, that his actions did not jeopardize the "public peace." ***Id.*** at 36-37.

For purposes of disorderly conduct, "public" means "affecting or likely to affect persons in a place to which the public or a substantial group has access[.]" 18 Pa.C.S.A. § 5503(c). Our Supreme Court has explained:

> Although Section 5503 as a whole is aimed at preventing public disturbance, it accomplishes this aim by focusing upon certain individual acts, which, if pursued with the intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, constitute the offense of disorderly conduct. These individual acts focus upon the offender's behavior. One such act . . . is "engaging in fighting or threatening, or in violent or tumultuous behavior."
>
> Significant is the fact that the General Assembly did not require that this prohibited act be directed at a certain number of persons that could qualify as "the public." Therefore, when an offender engages in fighting or threatening, or in violent or tumultuous behavior in a public arena, **even when that conduct is directed at only *one other person*, the offender may be subject to conviction for disorderly conduct**.

***Commonwealth v. Fedorek***, 946 A.2d 93, 100 (Pa. 2008) (citations omitted; emphasis added).

Appellant's argument that his actions did not disturb the public peace because only the two sisters were harmed is misplaced. There is no question

that the subject wave pool is a space in which the public has unimpeded access. Appellant concedes that the victims were inconvenienced, annoyed and/or alarmed. Therefore, we conclude that the Commonwealth presented sufficient evidence to establish the elements of the underlying offense.[1]

Appellant also contends that there was insufficient evidence to support the finding that he intended to cause substantial harm or serious inconvenience to increase the grading to a third-degree misdemeanor. **See** Appellant's Brief, at 37-39. He claims that "there was no public yelling or disturbance," that he was "entirely cooperative" and "did not resist arrest" to warrant a finding that he intended to cause substantial harm or serious inconvenience. **Id.** at 39. We disagree.

> When imposing the higher grading, we focus on
>
> the offender's *behavior*, not directly upon the public impact on that behavior. Thus, when the Commonwealth proves that an offender intended to cause public inconvenience, annoyance or alarm, or recklessly created a risk thereof . . . the next level of inquiry, under Section 5503(b), is the degree of the offender's *behavior*. If the offender acted with intent to cause substantial harm or serious inconvenience (and by doing so potentially increased the threat to the public peace and safety), the offense is graded as a third-degree misdemeanor.
>
> * * * *
>
> Therefore, we hold that Section 5503(b) does not require that the Commonwealth prove that an offender acted with intent to cause substantial *public* harm or serious *public* inconvenience, but only that the offender acted with intent to cause substantial harm or

---

[1] Appellant does not challenge that his actions caused a hazardous or physically offensive condition to the victims. His argument is limited to the intent element of the offense.

- 10 -

serious inconvenience, in order to sustain a conviction for disorderly conduct as a misdemeanor of the third degree.

*Fedorek*, 946 A.2d at 101 (emphases in the original; footnotes omitted).

The circumstances in this case support the finding that Appellant intended to cause substantial harm or serious inconvenience when he assaulted the victims. Prior to the incident, Appellant hovered around the victims and their family in the wave pool. F.M. and L.M. noticed Appellant near their group and found it unusual. Under cover of the waves, Appellant grabbed the inner buttocks of F.M. and L.M. in separate incidents, approximately five minutes apart. Both victims said that Appellant was rough and aggressive and described it as a "painful squeezing" that lingered for two to three seconds. Even after Appellant apologized to the first victim, she was weary of him and told her family to stay away from him. N.T. Trial, 10/6/23, at 36. The second victim screamed after being assaulted and turned around to find Appellant, who apologized.

The victims were at the waterpark for a birthday celebration. The victims were so traumatized and disturbed by Appellant's conduct that their entire group decided to leave the waterpark. *Id.* at 37. After being assaulted by Appellant, the victims felt violated and disgusting. *Id.* at 53. As Appellant's behavior showed he intended to cause substantial harm and serious inconvenience to the victims, there was sufficient evidence to support his third-degree misdemeanor disorderly conduct conviction.

In Appellant's third issue, he contends that the trial court erred when it allowed the Commonwealth to question Appellant about the credibility of the victims. *See* Appellant's Brief at 40-53. Specifically, he contends that the Commonwealth engaged in prosecutorial misconduct when Appellant was asked whether the victims were lying when they testified that Appellant apologized to them. *Id.*

> Our standard of review for a trial court's evidentiary ruling is narrow:
>
> The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Yockey*, 158 A.3d 1246, 1254 (Pa. Super. 2017). "To prevail on a prosecutorial misconduct claim, appellant must show the prosecutor's actions had the unavoidable effect of undermining the fact-finder's neutrality so as to preclude a true verdict." *Commonwealth v. Philistin*, 53 A.3d 1, 17 (Pa. 2012).

Although the holding of *Commonwealth v. Judy*, 978 A.2d 1015 (Pa. Super. 2009) applies to claims of prosecutorial misconduct during closing argument, we find its rationale to be instructive:

> It is settled that it is improper for a prosecutor to express a personal belief as to the credibility of the defendant or other witnesses. However, **the prosecutor may comment on the credibility of a witness**. Further, a prosecutor is allowed to respond to defense arguments with logical force and vigor. If defense counsel has attacked the credibility of witnesses in closing,

the prosecutor may present argument addressing the witnesses' credibility. ***Commonwealth v. Chmiel***, 889 A.2d 501, 544 ([Pa.] 2005).

\* \* \* \*

Our courts have explained that a prosecutor cannot intrude upon the exclusive function of the jury to evaluate the credibility of witnesses by broadly characterizing the testimony of a witness as a "big lie." Nonetheless, **a prosecutor's assertion that a witness had lied does not warrant a new trial where the statement was a fair inference from irrefutable evidence rather than a broad characterization**.

In cases where the outcome is controlled by credibility determinations, a prosecutor is permitted to make comments reinforcing the fact that the jury is presented with conflicting accounts. ***Commonwealth v. Johnson***, 588 A.2d 1303, 1307 ([Pa.] 1991). A prosecutor's contention that a defendant lied is neither unfair nor prejudicial when the outcome of the case is controlled by credibility, the accounts of the victim and the defendant conflict, and defense counsel suggests that the victim is fabricating. [***Id.***] at 1307.

***Id.*** at 1020, 1024-25 (some citations omitted; emphases added).

The determination of the credibility of a witness is within the exclusive province of the jury. ***Commonwealth v. McClure***, 144 A.3d 970, 977 (Pa. Super. 2016). Thus, both expert and lay witnesses are precluded from opining on a defendant's credibility and offering testimony that would bolster another witness's credibility. ***See id.*** (allowing a detective to opine on a defendant's credibility constitutes reversible error); ***see also Yockey***, 158 A.3d at 1256 ("[I]t is generally impermissible to question one witness about his opinion concerning the veracity of another witness.").

Neither of those situations are presented here. During the Commonwealth's case-in-chief, the victims testified that Appellant apologized to them after each incident. Appellant testified on his own behalf and denied apologizing to the victims. His testimony directly conflicted with the victims' testimony. On cross-examination, the Commonwealth confronted Appellant with inconsistencies between his testimony and the victims' testimony. Specifically, the prosecutor asked:

Q:      Are you telling me [L.M.] is lying?

MR. CUTAIO:      Objection.

* * * *

Q:      Was [L.M.] lying to Corporal Anglemyer?

MR. CUTAIO:      Objection, Your Honor.

N.T. Trial, 10/6/23, at 81, 83.[2]

Appellant and the victims' respective recollections of whether Appellant apologized were inconsistent. The implication that one or the other was lying was a reasonable inference that the jury could have reached. The prosecutor was simply emphasizing those inconsistencies, not stating a personal belief as to whether Appellant was lying. Nor did the prosecutor engage in improper

---

[2] The Commonwealth asked two other similar questions – "Are you saying that [F.M.] lied?" and "Are they telling the truth or are you telling the truth?" N.T. Trial, 10/6/23, at 82. Those questions were not objected to; therefore, they were not preserved for appellate review. *See* Pa.R.A.P. 302(a); *see also* ***Commonwealth v. McFalls***, 251 A.3d 1286, 1293 (Pa. Super. 2021) (party must make timely and specific objection at trial to preserve an issue for review).

bolstering or vouching of Commonwealth witnesses. The mere act of highlighting conflicting testimony did not hinder the jury in their ability to determine credibility. *See Judy*, *supra*. The jury received extensive instructions regarding the credibility of witnesses and conflicting testimony. *See* N.T. Trial, 10/6/23, at 128-33. Notably, the court instructed the jury that it was their duty to "judge the truthfulness and accuracy of each witness's testimony and decide whether to believe all or part or none of that testimony." *Id.* at 128-29.

Accordingly, we discern no abuse of discretion in the trial court permitting the Commonwealth to question Appellant whether the victims were lying when they testified that Appellant apologized to them.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/30/2025