J-S41036-23

2023 PA Super 280

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON THOMAS BERTOTHY | : | |
| | : | |
| Appellant | : | No. 254 WDA 2023 |

Appeal from the Judgment of Sentence Entered February 8, 2023
In the Court of Common Pleas of Clearfield County Criminal Division at
No(s): CP-17-SA-0000039-2022

BEFORE: PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.: **FILED: December 28, 2023**

Appellant, Jason Thomas Bertothy, appeals from the judgment of sentence entered by the Court of Common Pleas of Clearfield County after the court, sitting as finder of fact at Appellant's *de novo* summary trial for Disorderly Conduct—Unreasonable Noise,[1] found Appellant guilty. We affirm.

The relevant facts adduced from Appellant's summary trial follow. Pennsylvania State Trooper Austin Woolcock testified that on August 28, 2022, at 8:24 p.m., he received a dispatch to the area of 322 and Wallaceton Bigler Highway in Bradford Township, Clearfield County to respond to several complaints of a large explosion occurring on the Bertothy estate. N.T., 2/8/23, at 28, 32, 35. Trooper Woolcock arrived at the scene at approximately 8:30 p.m. and asked several people around a campfire if he could speak to the

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 5503(a)(2).

owner of the property. N.T. at 29. Appellant came out of his house and identified himself as the owner. N.T. at 29. According to Trooper Woolcock, he explained to Appellant that he was seeking the person responsible for causing the explosion, and he asked Appellant, "Who set off the Tannerite?" N.T. at 29. He testified that Appellant, without qualification, took responsibility for it. N.T. at 29.

Trooper Woolcock described Tannerite as a "very explosive" but legal target that has the potential to "take down buildings" when used in large enough quantities, although it was his experience that people mostly use it recreationally by shooting it on their rural properties consisting of many acres. N.T. at 29-30, 33. The state trooper said the explosion can create a very loud noise, and he explained that in this instance the disorderly conduct charge was based, in part, on the reports of several neighbors who live on the borders of Appellant's property and complained that the noise was of such magnitude as to cause them alarm, annoyance, and inconvenience. N.T. at 30, 33, 35.

On cross-examination, the defense elicited testimony from Trooper Woolcock that he could not recall if Appellant explicitly stated that he "shot the Tannerite" or if he said he was "taking responsibility" for it, because Appellant's responses quickly became "heated." N.T. at 30, 32. The state trooper also acknowledged that Appellant's son had been charged with disorderly conduct for his use of Tannerite within the previous year-and-a-half. N.T. at 36.

Two of Appellant's neighbors also testified. Shelby Bloom testified at length about how the explosion caused extreme noise and disturbed her and her husband as they sat on their back porch during twilight that evening. N.T. at 4-16, 38-42 (**see** *infra*). The Commonwealth also asked her to comment about spray painted "FU"s appearing on the public-facing side of Appellant's trees. On this point, the trial court overruled a defense objection, as it ruled the markings were admissible, relevant evidence on the question of whether Appellant had intended to annoy, alarm, or inconvenience his neighbors with the explosion at issue. N.T. at 38. Accordingly, Mrs. Bloom testified there were at least a dozen trees on the road with florescent yellow and bright pink "FU"s visible from her home and her neighbor's home, and several more on other roadside trees facing three other neighbors' homes. N.T. at 39-40. She claimed the markings first appeared after the neighbors had begun calling in complaints about the Bertothys, and she maintained the Bertothys add brighter color to them when they begin to fade. N.T. at 40.

A second neighbor, Mr. Timothy Holt, also testified to both his experience with the explosion for which Appellant was charged, his and his family's past experiences with Tannerite explosions occurring on Appellant's property, and the markings on the Bertothys' trees. N.T. at 16-27 (**see** *infra*). Trooper Woolcock likewise testified that he noticed the "FU" markings and surmised at the time that they were directed at the neighbors' homes in retaliation for their complaints against the Bertothys over the last year-and-a-half. N.T. at 35, 36.

Appellant testified in his own defense. He admitted telling State Trooper Woolcock that he took responsibility for the explosion, but he denied ever admitting to either shooting or directing another to shoot the Tannerite target. N.T. at 51. In fact, he testified that he was not present on the property at the time of the explosion. N.T. at 43. When asked if he had ever spoken to his neighbors about the noise issue with the Tannerite targets, Appellant answered that he hardly speaks to his neighbors, as they "just call the state police every time we turn around." N.T. at 48.

At the conclusion of the summary trial, the trial court found Appellant guilty on the single charge of Disorderly Conduct at Section 5503(a)(2) and sentenced him to a fine, costs, and 90 days of probation. This timely appeal followed.

Appellant raises the following issues for this Court's consideration:

1. Whether, under relevant law, the trial court erred in finding the Appellant guilty of disorderly conduct, 18 Pa.C.S.A. § 5503(a)(2), where the Commonwealth failed to present sufficient evidence to establish beyond a reasonable doubt that Appellant was present at the property and made the noise.

2. Whether, under relevant law, the trial court erred in finding the Appellant guilty of disorderly conduct, 18 Pa.C.S.A. § 5503(a)(2), where the Commonwealth failed to present sufficient evidence to establish beyond a reasonable doubt that Appellant intended to cause public inconvenience, annoyance or alarm, or recklessly created a risk thereof by making unreasonable noise.

3. Whether, under relevant law, the trial court erred in denying Appellant's motion for judgment of acquittal at the close of the

Commonwealth's case-in-chief, where the Commonwealth failed to present sufficient evidence to establish beyond a reasonable doubt that, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof," Appellant was present at the property and made unreasonable noise.

4. Whether, under relevant law, the trial court finding Appellant guilty of Disorderly Conduct, 18 Pa.C.S.A. § 5503(a)(2), is against the weight of the evidence, where the evidence established that Appellant was not present at the property at the time the targets were shot and shooting Tannerite targets is lawful and common.

5. Whether, under relevant law, the trial court erred in enjoining Appellant from possessing, using, selling, shooting, or engaging any Tannerite targets or other explosive device(s) of any type, or permitting others to engage in such conduct, on any property owned by him or rented by him, and further enjoining Appellant from permitting any activity on his property which causes unreasonable and alarming noise.

Appellant's Brief at 3-4.[2]

_____

[2] Initially, we note that Appellant fails to support his final two issues with any developed argument supported by citation to relevant authority. An appellant bears the "duty to present arguments that are sufficiently developed for our review." *Commonwealth v. Kane*, 10 A.3d 327, 331 (Pa. Super. 2010) (citation omitted); *see also Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (holding that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.") (citations omitted). Further, to the extent that Appellant argues the finder of fact should have credited his testimony over that of the Commonwealth's witnesses, we follow well-settled jurisprudence that we may not revisit such credibility determinations or substitute our judgment for that of the trier of fact. *See Commonwealth v. Cramer*, 195 A.3d 594, 600 (Pa. Super. 2018). For this reason, we decline to address such claims on the merits, as Appellant has waived them for present review.

We review Appellant's preserved challenges under the following standard of review:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Richard*, 150 A.3d 504, 516 (Pa. Super. 2016) (citation omitted).

Appellant was convicted of disorderly conduct under section 5503(a)(2), which states: "A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he ... makes unreasonable noise[.]" 18 Pa.C.S. § 5503(a)(2). It is well-settled that "the offense of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people" and "it is not to be used as a dragnet for all the irritations which breed in the ferment of a community." *Commonwealth v. Hock*, 728 A.2d 943, 947 (Pa. 1999). Rather, the specific

- 6 -

and definite purpose of the disorderly conduct statute is "to preserve the public peace." *Id*. *See also Commonwealth v. Fedorek*, 946 A.2d 93, 100 (Pa. 2008) (observing that the disorderly conduct statute "is aimed at protecting the public from certain enumerated acts" (original quotation marks and emphasis omitted)).

The crux of Appellant's preserved issues is that the Commonwealth failed to prove (1) that he caused the explosion, (2) that the explosion produced unreasonable noise, and (3) that he either intended to cause or recklessly created the risk of causing public inconvenience. We take each argument in turn.

The first two arguments go to whether evidence satisfied the *actus reus* requirement of a disorderly conduct—unreasonable noise offense pursuant to Section 5503(a)(2), which requires proof that a defendant's actions or words created noise that was unreasonable. *Commonwealth v. Fedorek*, 946 A.2d 93, 100  (Pa. Super. 2023) (stating, the disorderly conduct statute "is aimed at protecting the public from certain enumerated acts"). Here, Appellant advances a sufficiency claim stating that the Commonwealth failed to establish culpable action on his part when it introduced no evidence placing him at the scene of the explosion.

Contrary to Appellant's sufficiency arguments, the Commonwealth produced the testimony of Trooper Woolcock, who recounted that when he first arrived at the scene, he asked Appellant who caused the Tannerite

explosion and Appellant took responsibility for it. The trial court, in addressing its role as finder of fact at Appellant's summary trial, further made a credibility determination in favor of Trooper Woolcock and against the testimony of Appellant on this point:

> Even though numerous witnesses testified to the extreme noise and alarm caused by the explosion, [Appellant] argued that the Commonwealth did not prove that [Appellant] was responsible for causing the noise. However, [Appellant's] argument has no merit. Trooper Woolcock testified that when he spoke with [Appellant] that evening, [Appellant] took responsibility for the Tannerite and the explosion. Although [Appellant] testified, without any corroborating evidence, that he was not present at the time of the explosion, this Court found the testimony of Trooper Woolcock to be more credible than [Appellant's] testimony.

Trial Court Opinion, 5/9/23, at 4. Accordingly, we reject Appellant's sufficiency of the evidence argument pertaining to whether he was present on his property and caused the explosion.

Next, we examine whether evidence sufficed to prove beyond a reasonable doubt that the explosion caused unreasonable noise. We observe that under our jurisprudence, a noise is unreasonable for the purpose of the disorderly conduct statute where it is "not fitting or proper in respect to the conventional standards of organized society or a legally constituted community" or "inconsistent with neighborhood tolerance or standards." *Forrey*, 108 A.3d at 898 (quoting *Commonwealth v. Gilbert*, 449 Pa. Super. 450, 674 A.2d 284, 287 (1996)) (emphasis omitted); *see also Commonwealth v. Maerz*, 879 A.2d 1267, 1270 (Pa. Super. 2005).

Appellant argues that the explosion cannot be deemed inconsistent with community standards where Tannerite target shooting is both lawful and common in the area. To this point, he alludes to Mr. Holt's admission on the witness stand that he has heard from his home other Tannerite target shootings in the vicinity without calling police, and to Trooper Woolcock's testimony that he shoots Tannerite targets for recreation on his own property. Mr. Holt, however, indicated that the other audible explosions occurred at a greater distance away from his home and he did not state that they caused him or his neighbors to endure the extreme noise and vibrations generated by the explosion at bar. N.T. at 23. Similarly, Trooper Woolcock explained that the magnitude of the explosion created by shooting a Tannerite target depends on the amount of Tannerite pellets one places in the target. N.T. at 29, 34

Instead, a review of the collective evidence adduced at trial belies Appellant's contention that this Tannerite explosion, or any of the ones he had caused before, was in keeping with community standards. Appellant's neighbors Shelby Bloom and Timothy Holt focused their testimonies on the harassing nature of the explosions that have occurred on Appellant's property over time and, more specifically, recounted the distress they felt in response to what they heard and saw from the explosion that occurred on the day in question.

Mrs. Bloom testified that she and her husband were sitting on the back porch at about 8:30 p.m. at "twilight" when, without warning, "boom, this loud explosion was set off very near to [their] property." N.T. at 5. She and her husband believed it was Tannerite, because the explosion, she explained, "echoes and everything rattles in the house. . . . It's definitely an absolutely different sound" from gunshots that one will hear in the woods. N.T. at 6-7. She indicated the demographic of the neighborhood surrounding Appellant's 40-plus acre property "is mainly elderly folks." N.T. at 6, 13, 14.

Bloom, who lives "about a football field" away from the Bertothy's property, N.T. at 6-7, described how when there is an explosion, "all the neighbors gather, [asking] [']do you know what happened[?'], you know, and it's like, [']Well, yeah.['] I mean, we all know. I'm on the closer side and then across the road. So, we're surrounding it. All the neighbors get together, and we know it's coming in that direction." N.T. at 10. Her reason for not routinely challenging the conduct or calling the police each time was because "police have been called from previous events, and it doesn't seem to have any effect. They [the Bertothys] continue to set them off." N.T. at 12. She confirmed she "absolutely" finds the explosions to be alarming, N.T. at 14, even with the

Witness Timothy Holt's residence borders Appellant's property, and he was driving home when he heard the explosion from nearby and saw the "big smoke cloud" rise from Appellant's property. N.T. at 17, 21. He described

the Tannerite explosions as "extremely loud" and claimed that it "scares the daylights out of people because no one is expecting it, it shakes your house, and I'm afraid that it's going to damage some of my equipment in my business as well. . . . If I'm just sitting in the house watching TV and an explosion, yeah [sic], it startles you. It startles the daylights out of you." N.T. at 18, 20. Mr. Holt testified that his house is 35 feet from Appellant's property line. N.T. at 18.

Such testimony defeats Appellant's argument that evidence failed to establish the evening Tannerite explosion caused unreasonable noise. Contrary to Appellant's argument, the explosion was not in keeping with community noise standards and tolerance shown by the predominately elderly community, which frequently shared concerns with one another and occasionally filed complaints with law enforcement about similar explosions. In reaching this conclusion, we liken the facts to ***Commonwealth v. Alpha Epsilon Pi***, 540 A.2d 580, 583 (Pa. Super. 1988), where we affirmed a disorderly conduct citation of a college fraternity where noise from its late-night partying could be heard fifty yards away from the fraternity house. Specifically, we held:

> Given the time of day, the officer's ability to hear the noise from a distance of fifty yards during a warm, summer night, and the initial complaint to the officer which was made by a resident living at least one block away, we cannot say that the trier of fact could not have found the noise to have been unreasonable.

***Id***.

Viewing all the evidence in this case in a light most favorable to the Commonwealth, we find no error in the trial court's determination that the noise created by the twilight Tannerite explosion was extreme, inconsistent with the predominately elderly neighborhood's tolerance level, and, therefore, unreasonably loud in contravention of Section 5503(a)(2).

In Appellant's remaining preserved challenge, he argues that the Commonwealth failed to present sufficient evidence that he intended to cause, or recklessly created a risk of causing, public inconvenience, annoyance, or alarm. "The *mens rea* requirement of Section 5503[a] demands proof that [a defendant by his,] actions intentionally or recklessly created a risk of causing or caused a public inconvenience, annoyance[,] or alarm." **Commonwealth v. Maerz**, 879 A.2d 1267, 1269 (Pa. Super. 2005) (citation and original brackets omitted). "The specific intent requirement of [Section 5503(a)(2)] may be met by a showing of a reckless disregard of the risk of public inconvenience, annoyance, or alarm, even if the [defendant's] intent was to send a message to a certain individual, rather than to cause public inconvenience, annoyance, or alarm." **Commonwealth v. McConnell**, 244 A.3d 44, 51 (Pa. Super. 2020) (citing **Commonwealth v. Maerz**, 879 A.2d 1267, 1269 (Pa. Super. 2005)). **see also Fedorek**, 946 A.2d at 100 (stating, "[a]lthough Section 5503 as a whole is aimed at preventing public disturbance, it accomplishes this aim by focusing upon certain individual acts, which, if pursued with the intent to cause public inconvenience, annoyance, or alarm,

or recklessly creating a risk thereof, constitute the offense of disorderly conduct").

Evidence adduced at Appellant's summary trial established a history of neighbors calling law enforcement with noise complaints over prior explosions occurring on Appellant's property. Both the neighbor witnesses and Trooper Woolcock attested to this history. In retaliation, Appellant and his family spray painted "FU" signs on many trees facing the neighbors' properties, and the neighbor witnesses believed the Bertothys' repeated practice of driving their dirt bikes and ATVs around the neighborhood without exhaust systems or mufflers was also part of an intended pattern to annoy and inconvenience neighbors. N.T. at 26-27. For his part, Appellant suggested it was his neighbors who were unreasonable in their complaints, as he testified, "they just call the state police every time we turn around." N.T. at 48-49.

Based on this evidentiary record of the Bertothys' demonstrated pattern of ill-will toward their neighbors, the trial court found that the Commonwealth presented sufficient evidence to establish that Appellant "consciously disregarded a substantial and unjustifiable risk that public annoyance or alarm would result from the use of Tannerite explosives." Trial Court Opinion at 5. We discern no error with the trial court's inference that Appellant possessed culpable intent at the time he caused the explosion in question.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

12/28/2023