J-A05044-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANGEL LANECE JACKSON | : | |
| | : | |
| Appellant | : | No. 927 WDA 2023 |

Appeal from the Judgment of Sentence Entered July 17, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0007640-2021

BEFORE: MURRAY, J., KING, J., and FORD ELLIOTT, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED: APRIL 1, 2025**

Appellant, Angel Lanece Jackson, appeals from the judgment of sentence imposed by the Court of Common Pleas of Allegheny County after the trial court found her guilty of disorderly conduct.[1]  On direct review, Appellant challenges the sufficiency of the evidence supporting her conviction. We affirm.

The trial court offers us the following summary of the facts in this case:

> On September 7, 2021, at approximately 10:34 a.m., the McKeesport Police received a tip in relation to a suspect, later identified as Appellant, who was wanted for attempting to purchase a firearm at Legion Arms.  Appellant was subsequently apprehended, placed into custody, and transported to the police station.  Upon arrival at the station, because of her unruly

---

*Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 5503(a)(1).

behavior, assistance was requested to escort Appellant into the station. When attempting to remove Appellant from the vehicle, she refused to comply, was visibly agitated and yelling. Officers eventually had to physically assist Appellant into the station as she continued to refuse to cooperate. Appellant was subsequently placed into a holding cell, where she continued to resist and attempted to kick the officers multiple times. Appellant did eventually make contact with one of the officers kicking him in the right leg causing redness, swelling, and pain. Due to her violent behavior and continued attempts to escape custody, Appellant was left in handcuffs for officer safety until she calmed down. Throughout the duration of the incident[,] Appellant continued screaming that she was going to sue the police and that there would be protests in the area due to her arrest.

Trial Court Opinion, 1/17/24, 4-5 (omitted citation to affidavit of probable cause).

On May 26, 2023, Appellant proceeded to a non-jury trial.[2] *See* N.T., 5/26/23, 3. In lieu of any presentation of testimony, the parties stipulated to the contents of an affidavit of probable cause, an incident report, and a series of surveillance camera videos (specifically referred to as cameras 1-4, 7, 11-12, interior camera 10, and second interior camera 10). *Id.* After trial, the court held the verdict under advisement to review the agreed-upon evidentiary record. *Id.* at 5. On July 17, 2023, the trial court rendered a guilty verdict and immediately presided over a joint sentencing hearing for this matter, a separate matter at CP-02-CR-0007641-2021, which is pending

---

[2] The Commonwealth initially charged Appellant with one count of aggravated assault as a violation of 18 Pa.C.S. § 2702(a)(3). The trial court granted the Commonwealth leave to amend that charge to disorderly conduct on May 26, 2023. Criminal Information, 9/7/21, 1 (trial court's May 26, 2023 notation).

with our panel at 1108 WDA 2023, and a third matter at CP-02-CR-0007897-2020, in which Appellant entered a guilty plea on the same date. *See* N.T., 7/17/23, 2. The court sentenced Appellant to 90 days of probation to be served concurrently with probationary sentences imposed in her other two criminal matters. *Id.* at 7; Order (Sentencing), 7/17/23, 1. Appellant timely filed a notice of appeal and a court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). *See* Rule 1925(b) Statement, 9/11/23, 1-4; Rule 1925(b) Order, 8/21/23, 1; Notice of Appeal, 8/15/23, 1.

Appellant presents the following question for our review:

Whether the Commonwealth presented sufficient evidence to sustain [Appellant's] conviction for [d]isorderly [c]onduct, under 18 Pa.C.S.[ ] § 5503(a)(1); where it failed to prove, beyond a reasonable doubt, that [Appellant] engaged in fighting or threatening, or in violent or tumultuous behavior in public?

Appellant's Brief, 7 (suggested answer omitted).

Appellant challenges the sufficiency of the evidence, claiming that it failed to prove that: (1) she created a public disturbance when she kicked a detective in the holding cell of the police station; or (2) her actions created any disturbance to the rest of the police station that was readily accessible to the public. *See* Appellant's Brief, 12-16. She reasons that the public disturbance element of her offense went unproven because her act of kicking the detective occurred in a holding cell that was only accessible to law enforcement personnel, was behind a locked door that was "not open to

laypersons coming in and out of the police station," and was "removed from any public access." *Id.* at 14-15. As for the exclusive non-public nature of the holding cell room, Appellant refers us to the footage from cameras 4 and 11 that were stipulated to for purposes of her non-jury trial. *Id.*

In response, the Commonwealth argues that, even assuming *arguendo* that the holding cell was not a public place for purposes of the disorderly conduct statute, Appellant is not entitled to relief "because the record establishes that the remainder of the incident occurred in areas inside and outside of the police station that are 'public.'" Appellee's Brief, 19. As the evidence of record reflects that Appellant engaged in conduct encompassed by section 5503(a)(1) on the way to the holding cell, in places which appear to be public areas, we agree with the Commonwealth's analysis.

We review challenges to the sufficiency of the evidence under the following well-settled standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be

considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

***Commonwealth v. Bertothy***, 307 A.3d 776, 780-81 (Pa. Super. 2023) (citation omitted).

The trial court convicted Appellant of disorderly conduct under section 5503(a)(1), which states: "A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, [the defendant] … engages in fighting or threatening, or in violent or tumultuous behavior[.]" 18 Pa.C.S. § 5503(a)(1).

Our Supreme Court has cautioned that "the offense of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people[,]" and "it is not to be used as a dragnet for all the irritations which breed in the ferment of a community." ***Commonwealth v. Hock***, 728 A.2d 943, 947 (Pa. 1999) (citation omitted). At the same time, we have noted that the "specific and definite purpose of the disorderly conduct statute is 'to preserve the public peace.'" ***Bertothy***, 307 A.3d at 781, ***quoting Hock***, 728 A.2d at 947; ***see also Commonwealth v. Greene***, 189 A.2d 141, 145 (Pa. 1963) (holding that the crime of disorderly conduct "is intended to preserve the public peace"). "Public" is defined in the statute as "affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are … prisons … or any premises which are open to the public. 18 Pa.C.S. § 5503(c). Our Supreme Court has explained that the statute does not require that an offender's conduct

be directed at a certain number of persons that could qualify as "the public." Therefore, when an offender engages in fighting or threatening, or in violent or tumultuous behavior in a public area, even when that conduct is directed at only *one other person*, the offender may be subject to conviction for disorderly conduct.

*Commonwealth v. Fedorek*, 946 A.2d 93, 100 (Pa. 2008) (citation omitted; emphasis in original).

Given the nature of the stipulated trial below, our evidence of record for purposes of this sufficiency claim consists of the content of an affidavit of probable cause, an incident report, and a series of surveillance videos. *See* N.T., 5/26/26, 3. The affidavit of probable cause informs us of the following facts concerning Appellant's conduct prior to her arrival to the holding cells:

On 7 September 2021[,] at 10:34 [a.m.,] McKeesport Police received a tip in reference to a wanted suspect attempting to purchase a [firearm] at Legion Arms. Officers identified [Appellant] who was wanted out of McKeesport. At this time[,] she was placed into custody and transported to the station. It should be noted that Officer J. Thomas transported [Appellant] to the station[,] times and mileage w[ere] logged with [the] dispatch. Upon arriving on scene[,] Officer J. Thomas requested assistance in escorting the prisoner into the station. At this time[,] Officer Taylor, Lt. Det. S. Summers, and I, Officer Krakowiak[,] were attempting to assist [Appellant] get out of the vehicle [and] she would not comply. She was visibly aggravated and yelling in disbelief that she had a warrant. It should be noted that when she finally exited the vehicle with assistance, and did not want to cooperate and failed to walk with [the o]fficers as they were attempting to escort her into the station. [The o]fficers had to physically assist her in escorting her into the station. She also failed to walk down the steps as she had to be brought down the steps using her body weight to prevent her from being brought down the steps.

Affidavit of Probable Cause, 9/7/21, 2.

Our review of the surveillance video for camera 1 reflects a police SUV arriving on a paved roadway between an entrance to the police station and a fenced off area with train railways. Camera 1, 9/7/21, 10:46:08 a.m. Two other officers join the officer that exited from the driver's seat of the SUV and opened the rear driver's side door. *Id.* at 10:46:41 a.m. While the officers speak to the rear passenger and are joined by an additional officer, a man in a bright yellow shirt appears to exit the police station, dragging a full and tied up trash bag, and another man in a matching colored shirt walks down the paved roadway. *Id.* at 10:47:11 a.m. While no audio is available on the video, the man with the trash bag stops and looks at the police car before walking out of the frame of the recording:



*Id.* at 10:47:11-10:47:32 a.m. After being joined by what appears to be a fifth police officer in plain clothes, one of the officers seems to pull Appellant

out of the open back seat door following nearly two minutes of the officers talking to her while she was in the back seat. *Id.* at 10:48:32 a.m. Two officers walk Appellant to the entrance of the police station with their arms joined around her arms while she is handcuffed with her hands behind her back. *Id.* at 10:48:39 a.m.

On the way to the station door, Appellant plants her left foot and appears to prevent the officers from walking her any further to the door:



Camera 1, 9/7/21, 10:48:41 a.m. She then swings her right leg forward in a kicking motion so her right foot appears to swing between the legs of the officer on her right, but she does not make any apparent contact with him:



Camera 1, 9/7/21, 10:48:42 a.m. After going down on her right knee, she moves upright and seems to halt the officers from moving her forward, while mouthing something to the officer in front of her and shaking her head:



Camera 1, 9/7/21, 10:48:51 a.m. She speaks to that officer for about thirteen seconds before the officers holding her arms move her forward while she tries to impede their movements by not moving her legs. *Id.* at 1:48:46-1:49:05 a.m. Before the officers bring her into the entrance of the station by force, she tried to prevent them from moving her by bracing her foot against the door:



*Id.* at 10:49:05 a.m. After eighteen seconds of bracing the door with her foot, the officers dislodge her foot and get the door open. *Id.* at 10:49:05 a.m. They then bring her into the building. *Id.* at 10:49:47 a.m.

The footage from camera 2 shows Appellant thereafter continuing to mouth statements to the officers while the officers continue to move her down

a stairwell in the station with force as two plain-clothed women stand nearby on the landing:



Camera 2, 9/7/21, 10:50:07 a.m.  Nothing about the attire of the women in the stairwell suggested they were affiliated with the police or were anything other than civilians:



Camera 2, 9/7/21, 10:46:45 a.m.[3]

Upon review of the surveillance videos, giving the Commonwealth the benefit of all favorable inferences, as verdict-winner, **see Bertothy**, **supra**, we conclude that the exterior area of the police station surveilled by camera 1 and the stairwell covered by camera 2 appear to be public places, as defined by section 5503(c), because we observe pairs of civilians freely moving about those areas.

_____

[3] The footage from camera 3 shows the police officers moving Appellant through a hallway after exiting the stairwell covered by camera 2. The footage from camera 4 shows the officers moving Appellant through an office with the word, "Warden," on the window of the door to the office. The footage from camera 7 shows a wood-paneled hallway leading from the "Warden" office through which the officers then move Appellant to a doorway on the left side of the video. The footage from cameras 10 and 11 show holding cells where the officers placed Appellant. There does not appear to be anyone other than Appellant and police personnel in the footage from cameras 3-4, 7, and 10-11.

The next question for us is whether Appellant engaged in "fighting or threatening, or in violent or tumultuous behavior" in those areas "with the intent to cause public inconvenience, annoyance[,] or alarm, or recklessly creating a risk thereof."  18 Pa.C.S. § 5503(a)(1).  Given the lack of audio in the surveillance videos and the absence of any indication of threats made in the affidavit of probable cause, we can eliminate threatening behavior as the *actus reus* for the disorderly conduct conviction.  There is no appearance of combat between the handcuffed defendant and the police officers in the public areas so that also eliminates fighting as a basis for the *actus reus*.  Upon careful review, we conclude that Appellant's conduct in the public areas satisfied the "violent or tumultuous behavior" element.

As for the "tumultuous behavior" element, we have previously noted:

> "Tumultuous" is not defined in [s]ection 5503 or elsewhere in the Crimes Code.  Commonly, "tumultuous" is defined as "marked by tumult"; "tending or disposed to cause or incite a tumult"; or "marked by violent or overwhelming turbulence or upheaval." Merriam Webster's Collegiate Dictionary 1272 (10th ed.[ ]1996). "Tumult" is relevantly defined as "a disorderly agitation … of a crowd usu[ally] with uproar and confusion of voices," or a "violent outburst."  *Id.* at 1271-72.

*Commonwealth v. Love*, 896 A.2d 1276, 1285 (Pa. Super. 2006) (footnote omitted).

Throughout the footage from camera 1 and camera 2, Appellant shifts her body and uses her weight to resist the officers moving her in and through public areas of the police station.  Appellant also makes a kicking motion with

- 13 -

her right foot in the direction of one of the two officers escorting her into the police station. Camera 1, 9/7/21, 10:48:43 a.m. The affidavit of probable cause notes that she was "visibly aggravated and **_yelling in disbelief_** that she had a warrant" upon her arrival at the scene. Affidavit of Probable Cause, 9/7/21, 2 (emphasis added). While there is no audio available on the surveillance videos, Appellant appears to be yelling throughout the time in which the officers escorted her to the holding cell. One of the officers in the stairwell doorway during the footage from camera 2 appears to be holding his ears closed with his fingers as she passed by him, first his right ear and then his left ear, as if Appellant was yelling in his direction and in the direction of the two civilian women in the stairwell. Camera 2, 9/7/21, 10:50:04-10:50:10 a.m. Viewing this evidence in the light most favorable to the Commonwealth, it showed that Appellant had a violent outburst through the public areas of the police station, which did cause alarm. At a minimum, within the close confines in the stairwell, Appellant recklessly created a risk of public annoyance or alarm with her outburst, satisfying the elements of her disorderly conduct conviction.

Appellant's actions described in the affidavit of probable cause and recorded by the surveillance videos grossly deviated from the standard for conduct a reasonable person would observe in Appellant's situation. **_See_** 18

Pa.C.S. § 302(b)(3).[4]  Regardless of any confusion or agitation with the legitimacy of the basis for her arrest, Appellant was not permitted or entitled to the violent outburst she carried throughout the public areas of the McKeesport police station.  Appellant's conduct fits the definition of "tumultuous," as it was marked by overwhelming turbulence and upheaval. Even if her conduct was only directed at the police officers escorting her, it still constituted disorderly conduct where it can be inferred from the circumstances that her intent was to annoy or alarm the members of the public that she passed at the police station.  *See Commonwealth v. Young*, 535 A.2d 1141, 1143 (Pa. Super. 1988) (observing that the courts of this Commonwealth "have held that one who exhibits disorderly behavior in a public place is guilty of disorderly conduct even if that behavior is directed at a single individual.").  Thus, the evidence is sufficient to sustain Appellant's conviction for disorderly conduct under 18 Pa.C.S. § 5503(a)(1).[5]

---

[4] The recklessness *mens rea* is defined as follows:

> A person acts recklessly with respect to a material element of an offense when [s]he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from h[er] conduct.  The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to h[er], its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation

18 Pa.C.S. 302(b)(3).

[5] Given our conclusion that Appellant's conduct observed in the footage from camera 1 and camera 2 was fully sufficient to sustain her conviction, we need

*(Footnote Continued Next Page)*

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 4/1/2024

---

not delve into Appellant's argument that the holding cell observed in the footage from camera 10 and camera 11 was not a public area as defined by 18 Pa.C.S. § 5503(c).