J-S17037-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JULIE LENORE CHAFFER | : | |
| | : | |
| Appellant | : | No. 1760 EDA 2025 |

Appeal from the Judgment of Sentence Entered April 16, 2025
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0000167-2024

BEFORE:   PANELLA, P.J.E., STABILE, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:              **FILED MAY 26, 2026**

Appellant, Julie Lenore Chaffer, appeals the judgment of sentence imposed by the Monroe County Court of Common Pleas after the trial court found her guilty of disorderly conduct by making unreasonable noise.[1]  She argues that this Court has jurisdiction over this appeal due to a breakdown in court procedure and challenges the sufficiency of the evidence supporting her lone conviction.  We affirm.

The trial court has summarized the underlying facts of this matter as follows:

> On October 16, 2023, police were dispatched to Peak Motor Auto Sales after being contacted by the manager of that establishment about a distraught female in the parking lot of the business.  When police arrived, [Appellant] was speaking to [emergency medical

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 5503(a)(2).

technicians] outside of her vehicle. [Appellant] told police that she was driving from her home in Mountainhome[, in Barrett Township, Monroe County,] and became distraught while driving and pulled into the parking lot. [Appellant] was eventually placed into custody after a series of [Advanced Roadside Impaired Driving Enforcement ("ARIDE")] tests were performed. According to the [trial] transcript, one of the troopers that responded to the call testified that[,] while attempting to read [Appellant] her **Miranda**[2] rights[, Appellant] was yelling very loudly towards the manager that initially called the police. The trooper then asked [Appellant] if she understood her rights and she responded that she did not. He attempted to re-read [Appellant] her **Miranda** rights at which point [Appellant] again began to scream. The trooper also testified that [Appellant] showed some resistance when an attempt was made to place her into custody and that [Appellant] was screaming at onlookers to help her.

Trial Court Opinion, 9/19/25, 1-2 (record citations omitted).

On April 16, 2025, Appellant proceeded to be tried at a non-jury trial for, *inter alia*, disorderly conduct. The Commonwealth presented testimony from Pennsylvania State Police Troopers Jenna Pacella and Bryan Kolodziej. Trooper Pacella was the first responding trooper and obtained Appellant's consent to submit to standardized field sobriety tests. **See** N.T. Trial/Sentencing Hearing, 4/16/25, 5-10. She described Appellant, with respect to the relevant incident, as having "various mood swings," "pinpoint" pupils, and "red blood[-]shot, watery eyes," and recalled that Appellant "kept complaining about … having a dry mouth." **Id.** at 8, 13.

Trooper Kolodziej arrived at the scene at the request of Trooper Pacella and conducted the ARIDE tests of Appellant. **See** N.T. Trial/Sentencing Hearing, 4/16/25, 12, 17-19. He described Appellant during the tests as

_____

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

"fidgety, frantic in a way, and hard to communicate with. Just kind of all over the place." *Id.* at 19.

Trooper Pacella took Appellant into custody shortly after the ARIDE tests conducted by Trooper Kolodziej. *See* N.T. Trial/Sentencing Hearing, 4/16/25, 23. Trooper Pacella described Appellant's screaming, which formed the basis for her disorderly conduct conviction, as follows:

> While in my car, I attempted to read her [the] *Miranda* rights and warnings. Through that time, it was very difficult. I did read it all the way through while she was yelling very loudly towards the manager, you know, the complainant of the call. At the end, I asked her if she understood her rights, she related she did not. Therefore, I attempted to re-read the *Miranda* rights and warning. She began screaming again; therefore, I discontinued during the second time trying to read it to her.
>
> …
>
> During the actual incident, obviously the [emergency medical technicians] were there, the troopers were there, the complainant was there. However, he kept going inside the business, you know, to separate himself from it. He later came back out, and that's when [Appellant] began screaming as we attempted to put her into custody. There was some resistance there, and she was screaming to him, ["H]elp me,["] things of that nature.

*Id.* at 25-26. In addition to the presentation of the live testimony from the troopers, the Commonwealth played a motor vehicle recording from Trooper Pacella's marked police car. *See id.* at 5, 28-29.

Appellant declined to present any evidence. *See* N.T. Trial/Sentencing Hearing, 4/16/25, 31. After considering the Commonwealth's evidence and the arguments of counsel, the trial court found Appellant guilty of the above-referenced count of disorderly conduct by making unreasonable noise and

found her not guilty of the other pending charges in the case.[3] *See, e.g.*, N.T. Trial/ Sentencing Hearing, 4/16/25, 35; Order (Bench Trial), 4/16/25, 1. On the same day, the trial court sentenced Appellant to pay a fine of $100.00 for the lone summary offense conviction, along with the imposition of court costs. *See id.* At the conclusion of the combined non-jury trial and sentencing hearing, the trial court did not orally advise Appellant as to any deadlines for filing a post-sentence motion or an appeal. Nor did the court include a reference to any filing deadlines for a post-sentence motion or appeal in its order entering the verdict and imposing the sentence.[4] *See* Order (Bench Trial), 4/16/25, 1.

---

[3] The charges for which Appellant was found not guilty were: (1) driving under the influence: controlled substance – impaired ability, 75 Pa.C.S. § 3802(d)(2); (2) careless driving, 75 Pa.C.S. § 3714(a); and (3) resisting arrest, 18 Pa.C.S. § 5104.

[4] Pennsylvania Rule of Criminal Procedure 720(D) provides that "[t]here shall be no post-sentence motion in summary case appeals following a trial *de novo* in the court of common pleas[, and t]he imposition of sentence … shall constitute a final order for purposes of appeal." Pa.R.Crim.P. 720(D). Because Appellant's case originated in the Court of Common Pleas based on a misdemeanor charge for which Appellant was not found guilty, Rule 720(D)'s prohibition on the filing of post-sentence motions is inapplicable in the instant matter. *See, e.g.*, *Commonwealth v. Meinsler*, 2024 WL 3311322, *4 n.3 (Pa. Super., filed July 5, 2024) (unpublished memorandum cited for persuasive value) (noting that Rule 720(D) was inapplicable to a case that originated in a Court of Common Pleas based on a misdemeanor charge that was later amended to a summary offense); *Commonwealth v. Rizk*, 2021 WL 2666983, *2 n.2 (Pa. Super., filed June 29, 2021) (unpublished memorandum cited for persuasive value) (finding that Rule 720(D) "had no bearing" where Rizk was convicted of summary harassment after a bifurcated jury trial in the Court of Common Pleas, and noting, "Since no trial *de novo* occurred, the rules covering trials *de novo* are irrelevant").

On May 8, 2025, Appellant filed a post-sentence motion in which she challenged the sufficiency of the evidence for her summary conviction. ***See*** Post-Sentence Motion, 5/8/25, ¶¶ 5-7. On May 19, 2025, the trial court ordered a hearing on the post-sentence motion at which hearing the trial court heard arguments from counsel and denied the motion on June 25, 2025. ***See*** N.T. Post-Sentence Motion Hearing, 6/25/25, 2-5; Order (Post-Sentence Motion Denial), 6/25/25, 1. On July 8, 2025, Appellant filed a notice of appeal. ***See*** Notice of Appeal, 7/8/25, 1. Appellant and the trial court subsequently satisfied their obligations under Pennsylvania Rule of Appellate Procedure 1925(b). ***See*** Order (Rule 1925(b)), 7/11/25, 1; Rule 1925(b) Statement, 8/1/25, 1; Trial Court Opinion, 9/19/25, 1-3.

While this appeal has been pending, our Court issued a rule to show cause order directing Appellant to explain why this appeal should not be quashed as untimely filed where her notice of appeal was filed more than thirty days after the imposition of her sentence and her post-sentence motion was not filed within ten days of sentencing. ***See*** Superior Court Order (Rule to Show Cause), 11/12/25, 1, (citing ***Commonwealth v. Dreves***, 839 A.2d 1122 (Pa. Super. 2003) (*en banc*) (a timely post-sentence motion tolls the appeal period; an untimely motion does not)). Appellant filed a response, acknowledging that her post-sentence motion was untimely filed without a request for permission for *nunc pro tunc* review, but asserted that her appeal should be considered timely based on a breakdown in court process because the trial court did not advise her of the deadline for filing a timely notice of

appeal, either at the hearing on the post-sentence motion or in the court's order denying the post-sentence motion. *See* Response to Rule to Show Cause Order, 11/21/25, ¶¶ 2-4, 8-9. We discharged our rule to show cause order and referred the question to the panel assigned to decide the merits of this appeal. *See* Superior Court Order, 1/7/26, 1.

On January 8, 2026, we directed the trial court to amend its docket to properly reflect that Appellant's judgment of sentence was imposed on April 16, 2025, rather than the incorrect docket notation of April 17, 2025. *See* Superior Court Order (Docket Amendment), 1. The trial court subsequently complied with that order. *See* Trial Court's Response to Superior Court Order, 1/13/26.

Appellant presents the following questions for our review:

1.   Whether this appeal should be dismissed as untimely?

2.   Whether there was insufficient evidence of disorderly conduct where there was no evidence of intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk of unreasonable noise?

Appellant's Brief, 6 (suggested answers and unnecessary capitalizations omitted).

In her first issue, Appellant addresses the issue raised in her response to this Court's rule to show cause order. She asserts that, even though her untimely filed post-sentence motion did not toll the thirty-day deadline for filing her notice of appeal, we have jurisdiction to entertain her direct review appeal due to a breakdown in court operations when the trial court failed to

advise her of the deadline for filing a timely notice of appeal either at sentencing or when it denied her untimely post-sentence motion. **See** Appellant's Brief, 18-22 (citing, *inter alia*, **Commonwealth v. Patterson**, 940 A.2d 493, 500 (Pa. Super. 2007) (trial court's failure, in denying Patterson's untimely post-sentence motion for reconsideration, to advise Patterson of the deadline for filing an appeal constituted a "breakdown" that excused the untimely filing of a notice of appeal), and **Commonwealth v. Coolbaugh**, 770 A.2d 788, 791 (Pa. Super. 2001) (excusing the filing of an untimely notice of appeal based on a "breakdown" in court operations where a trial court misstated the time-period for Appellant's deadline to file a timely notice of appeal)).

We agree that we have jurisdiction to review this appeal.[5] Ordinarily, "[j]urisdiction is vested in the Superior Court upon the filing of a timely notice of appeal," **Commonwealth v. Green**, 862 A.2d 613, 615 (Pa. Super. 2004) (*en banc*), and an appellant must file a notice of appeal "within 30 days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903(a). We may not extend the deadline for filing a notice of appeal. **See** Pa.R.A.P. 105(b). However, we may excuse the untimely filing of a notice of appeal in the event of a breakdown in the operations of the court. **See**

_____

[5] The Commonwealth has filed a brief incorporating the analysis in the trial court's Rule 1925(a) opinion, **see** Appellee's Brief, 3, and the trial court's opinion does not address this claim because the trial court satisfied its obligations under Rule 1925 prior to the filing of this Court's Rule to Show Cause Order.

***Commonwealth v. Braykovich***, 664 A.2d 133, 136 (Pa. Super. 1995) (noting that the official note to Pa.R.A.P. 105 makes clear that the appellate courts retain the power to grant relief from the effects of a breakdown in the court system).

Here, the trial court did not inform Appellant of the deadline for a timely notice of appeal either at sentencing, in its sentencing order, or when denying the post-sentence motion. ***See*** N.T. Trial/Sentencing Hearing, 4/16/25, 35; Order (Bench Trial), 4/16/25, 1. This is a breakdown in the court system, because a sentencing court "shall determine on the record that the defendant has been advised," *inter alia*, "of the right to file a post-sentence motion and to appeal, of the time within which the defendant must exercise those rights, and of the right to assistance of counsel in the preparation of the motion and appeal." Pa.R.Crim.P. 704(C)(3)(a). The trial court, in this matter, defaulted on that obligation when it announced Appellant's sentence, recapped its preceding verdict, and merely announced that the court was "adjourned." N.T. Trial/Sentencing Hearing, 4/16/25, 35. The court's failure to advise Appellant of her appellate rights and the time in which she needed to file a timely notice of appeal constituted a breakdown in court operations that now requires us to excuse the untimely filing of her notice of appeal. ***See Commonwealth v. Floyd***, 257 A.3d 13, 17 (Pa. Super. 2020) (trial court's failure to advise Floyd of his appellate rights after imposing sentence or determine on the record that Floyd had been advised of his appellate rights constituted a breakdown in the operations of the court).

In her second issue, Appellant challenges the sufficiency of the evidence supporting her disorderly conduct conviction. *See* Appellant's Brief, 22-36. She acknowledges that, at the time of her arrest, she was having "a mental health episode" and was "distraught and sobbing in a business parking lot." *Id.* at 22. She agrees that, "[w]hen [she] was arrested, she asked the business'[s] manager for assistance." *Id.* She asserts that "[a] loud tone and an annoying persistence" did not turn her speech "into unreasonable noise" for purposes of the disorderly conduct statute. *Id.* She then proceeds to argue that the evidence did not prove that she committed the *actus reus* for the crime, *i.e.*, that she made unreasonable noise, or that she did so with the requisite *mens rea*, the intent to cause or recklessly create the risk of public inconvenience, annoyance, or alarm. *See id.* at 23-36.

For challenges to the sufficiency of evidence to support a criminal conviction, we employ a well-settled standard of review:

> [T]he standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof [of] proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually

received must be considered. Finally, the trier of fact[,] while passing upon the credibility of witnesses and weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

***Commonwealth v. Kim***, 888 A.2d 847, 851-52 (Pa. Super. 2005) (citation omitted).

Appellant was convicted of disorderly conduct under Section 5503(a)(2), which states, in relevant part: "A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance[,] or alarm, or recklessly creating a risk thereof, [s]he … makes unreasonable noise." 18 Pa.C.S. § 5503(a)(2). We have explained this offense:

is not intended as a catchall for every act which annoys or disturbs people; it is not to be used as a dragnet for all irritants which breed in the ferment of a community. It has a specific purpose; it has a definite objective, it is intended to preserve the public peace.

***Commonwealth v. Forrey***, 108 A.3d 895, 897 (Pa. Super. 2015) (citation omitted).

The *actus reus* requirement of this offense "requires proof that a defendant's actions or words created noise that was unreasonable." ***Commonwealth v. Bertothy***, 307 A.3d 776, 781 (Pa. Super. 2023) (citation omitted). Noise is unreasonable for purposes of Section 5503(a)(2) where it is "not fitting or proper in respect to the conventional standards of organized society or a legally constituted community." ***Forrey***, 108 A.3d at 898 (quoting ***Commonwealth v. Gilbert***, 674 A.2d 284, 287 (Pa. Super. 1996), and ***Commonwealth v. Maerz***, 879 A.2d 1267, 1269 (Pa. Super. 2005)).

"Ultimately, … what constitutes the [*actus reus*] of 'unreasonable noise' under the disorderly conduct statute is determined solely by the **volume of the speech**, not its content." ***Id.*** (quoting ***Maerz***, 879 A.2d at 1269; emphasis in original). "A court looks to the content of a person's speech only to infer the requisite *mens rea* (intent or recklessness)." ***Id.*** (citing ***Maerz***, 879 A.2d at 1269).

The *mens rea* requirement of Section 5503(a) demands proof that a defendant by her actions "intentionally or recklessly created a risk of causing or caused a public inconvenience, annoyance[,] or alarm." ***Bertothy***, 307 A.3d at 783 (quoting ***Maerz***, 879 A.2d at 1269; brackets added in ***Bertothy***). "The specific intent requirement of [Section 5503] may be met by a showing of a reckless disregard of the risk of public inconvenience, annoyance, or alarm, even if the [defendant's] intent was to send a message to a certain individual, rather than to cause public inconvenience, annoyance, or alarm." ***Commonwealth v. McConnell***, 244 A.3d 44, 51 (Pa. Super. 2020) (quoting ***Maerz***, 879 A.3d at 1269).

The police motor vehicle recordings entered into the evidentiary record at trial reflected Appellant's participation in field sobriety tests and her subsequent arrest in the parking lot of the Peak Motor Auto Sales business. ***See*** Trial Exhibit 2 (flash drive containing video files including an MP4 video file titled, "JennaPacella_202310161744_N620_7142588" ("Front Facing Video")). After the officers asked Appellant to turn around and put her hands behind her back and told her to "not to make a scene," Front Facing Video,

26:52-26:14, Appellant yelled, "Sir" and "Sir, can you help me," while raising her right hand in an apparent attempt to get the attention of someone outside the frame of the patrol car's front facing camera view. *Id.* at 27:18-23. She identified the person her yelling was directed to as the manager of the business by remarking that the person was the one "who originally called the police." *Id.* at 27:20-27:25. Appellant thereafter argued with the police extensively about her circumstances and questioned the actions of the police officers but those communications, while somewhat loud and emotional, were not at the same volume as her yelling toward the business manager. As those arguments continued, Appellant resumed yelling, "Sir," to the business manager three more times after the officers told her that they were putting her in their patrol car. *Id.* at 29:17-29:28.

When the officer attempted to place her in the back of the patrol car, she yelled, "Help me, mister, help me," and then continued yelling repeatedly, "Help me" and "Sir." Front Facing Video, 29:51-30:06. She also yelled at the officers, "For what? Why? Why? Give me one reason that's good," before professing her rights and again disputing the reason for her detainment at a lower volume. *Id.* at 30:09-30:37. She then yelled, "Sir," again. *Id.* at 30:35. In her ensuing statements to the police officers, Appellant stated, "I would like that gentleman to come out," seemingly referring to the business manager, and mentioned that she wanted to ask him a question. *Id.* at 31:46-31:56. After Officer Pacella made a "shh" sound and instructed her to "stop yelling," Appellant yelled, "Please just ask him" and "Excuse me, he

doesn't have the right…" *Id.* at 32:02-32:17. She yelled, "Sir," again at a later point after expressing that she wanted to ask the business manager for a favor. *Id.* at 34:35-34:40. Between the initiation of the arrest and Appellant's eventual removal from the parking lot, Appellant continually maintained a loud, combative tone with the police officers, but we have highlighted here the loudest statements that could be reasonably characterized as yelling.

With respect to the *actus reus* element for her offense, Appellant compares her yelling with the yelling of a defendant to a neighbor to indicate that the police were wrong for trying to tow the neighbor's car, which we found to be insufficient to prove disorderly conduct in *Gilbert*. *See* Appellant's Brief, 23-24. Notably, in *Gilbert*, the evidence did not demonstrate that Gilbert "was especially loud, or that his remarks incited the neighbors or endangered the police," the evidence only proved that the arresting officer was annoyed by Gilbert's expression of disagreement with the police officer's intention to tow the neighbor's car, and the requisite intent for disorderly conduct could not be inferred from the officer's annoyance with Gilbert. 674 A.2d at 452-54. Thus, in *Gilbert*, we concluded that evidence was insufficient to prove the *mens rea* element for disorderly conduct or that Gilbert's "conduct was unreasonably noisy," in that it was "not unreasonable, loud, boisterous, or unseemly." *Id.* at 454-55.

We disagree that Appellant's yelling was comparable to the yelling in *Gilbert*. Unlike Gilbert, Appellant engaged in loud, intermittent yelling that

went on for minutes while the police were trying to arrest her and she was being uncooperative with their directions. Additionally, Appellant was not engaging in communications with a fellow neighbor in a residential neighborhood during the incident in question. She was in the middle of a parking lot of a commercial automobile sales business that, based on the police motor vehicle recording, where other individuals were present. Appellant claims that "[N]o member of the public heard" her or "was present at that time." Appellant's Brief, 27. Her assertion is belied by the fact that she was yelling at a business manager present at the scene, as confirmed by the officers. *See* Trial/Sentencing Hearing, 4/16/25, 26 ("the complainant was there. However, he kept going inside the business, you know, to separate himself from it. He later came back out, and that's when the defendant began screaming as we attempted to put her into custody … and she was screaming to him"). Furthermore, the police motor vehicle recording depicts multiple people walking around the lot immediately behind her just prior to her arrest and at least one person walking through the parking lot during her arrest. *See* Front Facing Video, 8:57, 15:56, 34:08-34:26.

We do not agree with Appellant that her "yelling" was "nothing more than a loud speaking voice." Appellant's Brief for 30. The trial court as the fact-finder at trial describes the communications at issue as "screaming [that] does not fit into conventional standards of organized society," Trial Court Opinion, 9/19/25, 2, and our review of the police motor vehicle recording footage aligns with the trial court's characterization. The noise was also not

brief as Appellant alleges, *see* Appellant's Brief, 32, it continued intermittently for minutes on the police motor vehicle recording. It was not comparable to a single outburst of a person screaming an expletive that Appellant cites as support in a recent unpublished memorandum of this Court in which we concluded a lack of evidence to support disorderly conduct under Section 5503(a)(2). *See* Appellant's Brief, 32-33 (citing ***Commonwealth v. Barbara***, 2026 WL 100787 (Pa. Super., filed Jan. 14, 2026) (unpublished memorandum) (495 MDA 2025)).

As for the *mens rea* element, Appellant asserts, "No evidence was presented that anyone was disturbed or annoyed except, perhaps, the officer herself." Appellant's Brief, 27. That assertion fails to consider that the testimony and the content of Appellant's yelling pointed to the presence of the business manager for the automobile sales company and the motor vehicle recording showed people in the parking lot before and during Appellant's arrest.

The fact that the business manager contacted the police to begin with to respond to Appellant, *see* Trial/Sentencing Hearing, 4/16/25, 6, and yet Appellant spent minutes yelling for this person to somehow intervene in her arrest demonstrated that Appellant was acting, at a minimum, with a reckless disregard of the risk of alarming the business manager. The police testimony demonstrated the manager's presence but the police motor vehicle recording did not show any effort by him to intervene. As Appellant thereafter persisted in yelling for this person's assistance for minutes, we can easily infer that

Appellant purposely continued her yelling at this person in an attempt to force the manager to intervene in her arrest by trying to alarm or annoy him. In any event, this evidence amply demonstrated Appellant's necessary *mens rea* for her offense.

This was not merely a case, as Appellant suggests, where her yelling simply achieved the annoyance of a police officer by interrupting the officer's reading of the *Miranda* warning. *See* Appellant's Brief at 27. The evidence demonstrated, through the presence of the business manager and people passing through the business parking lot, that Appellant was interrupting a commercial business while it was conducting business. Section 5503 provides a definition for "public," which for purposes of the statute "means affecting or *likely* to affect persons in a place to which the public or a substantial group has access." 18 Pa.C.S. § 5503(c). That definition specifically includes "places of business … which are open to the public." *Id.* Appellant's disruption of the business where she persisted in her continued yelling during her arrest squarely fits within the language of the disorderly conduct statute. To continue yelling in an operating business open to the public clearly demonstrates reckless conduct reflecting a conscious disregard of a substantial and unjustifiable risk that public annoyance or alarm would occur. *See Commonwealth v. Reynolds*, 835 A.2d 720, 731 (Pa. Super. 2003) ("The reckless creation of a risk of public alarm, annoyance or inconvenience is as criminal as actually causing such sentiments.") (citation omitted).

Appellant's final point is that "[t]here was no evidence that the noise violated community tolerance or standards." Appellant's Brief, 27. Appellant suggests that her noise at issue in this case merely involved her objecting to her arrest: "Briefly raising one's voice to object to an arrest … is not the type of conduct that constitutes unreasonable noise." *Id.* at 32. This is not a fair characterization of the noise at issue, and certainly not consistent with the proper standard of review. Appellant engaged in extensive efforts to object to her arrest in her arguments with the police but that was not the focus of the evidence sustaining her offense. Here, the content of Appellant's yelling that sustained her conviction involved her attempt to get a third-party, the business manager, to intervene in the police officers' efforts to arrest her. This is a sufficient factual basis to sustain her disorderly conduct conviction.

"The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder." *Commonwealth v. Hock*, 728 A.2d 943, 946 (Pa. 1999). While the First Amendment to the United States Constitution dictates that people must have latitude to express objections to their arrest and their treatment at the hands of the police, our community standards do not extend approval or toleration to unreasonably loud requests to third-parties to intervene in routine, non-violent, lawful arrests conducted by police. We have previously found persuasive that "[o]rderly and safe law enforcement demands that an arrestee not resist a lawful arrest and a bystander not intervene on his behalf unless the arrestee is actually about to be seriously injured or killed." *Commonwealth v.*

*French*, 578 A.2d 1293, 1298 (Pa. Super. 1990) (citation omitted). Applying that reasoning to the instant case, there was no reason for the business manager to intervene in Appellant's arrest, and Appellant ran afoul of the disorderly conduct statute by continuing to request the business manager to improperly intervene in her arrest by yelling at him in his place of business. As an improper intervention or interruption of a lawful arrest by a third-party, not involved in the arrest, could easily "lead to tumult or disorder," Appellant's yelling in this instance fits within the ambit of the disorderly conduct statute. Appellant's conduct went beyond an effort to annoy the arresting police officers, which by itself would not be sufficient to violate the statute. *See Hock*, 728 A.2d at 947 ("It does not follow, however, that Section 5503(a) may be used as a vehicle to protect the police from all verbal indignities … The police must expect that, as part of their jobs, they will be exposed to daily contact with distraught individuals in emotionally charged situations.").

Viewing the evidence in the light most favorable to Commonwealth, we conclude that the evidence was sufficient to sustain disorderly conduct under Section 5503(a)(2).

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/26/2026

- 18 -